Jeffrey E. Marotz, Plaintiff-Appellant-Petitioner,

v.

Arthur E. Hallman, Jr., ACUITY, a Mutual Insurance Company, The Mega Life and Health Insurance Company and IMT Insurance Company (Mutual), Defendants,

Rural Mutual Insurance Company, Defendant-Respondent.

Supreme Court

*No. 2005AP1579. Oral argument January 5, 2007. —Decided July 10, 2007.*

2007 WI 89

(Also reported in 734 N.W.2d 411.)

For the plaintiff-appellant-petitioner there were briefs by *Virginia M. Antoine* and *Habush Habush & Rottier S.C.*, Milwaukee, and oral argument by *Craig A. Christensen.*

For the defendant-respondent there was a brief by *Thomas A. Maroney* and *Hansen, Shambeau, Maroney, Anderson & Parry,* Waupaca, and oral argument by *Thomas A. Maroney.*

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.,* Milwaukee.

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals decision,[1] which affirmed the judgment of Waupaca County Circuit Court, John P. Hoffmann, Judge. Judge Hoffman denied the motion for declaratory judgment of Jeffery E. Marotz (Marotz) and dismissed his claim against Rural Mutual Insurance Company (Rural).

¶ 2. Two issues are before this court.[2] First, does Wis. Stat. § 632.32(5)(i)1. (2005–06),[3] which allows an

---

[1] *Marotz v. Hallman,* No. 2005AP1579, unpublished slip op. (Wis. Ct. App. December 22, 2005).

[2] The issues presented and our respective holdings are the same in this case and *Bailey v. State Farm Mutual Automobile Insurance Company,* 2007 WI 90, 302 Wis. 2d 409, 734 N.W.2d 386, which has been released the same day.

[3] Wisconsin Stat. § 632.32(5)(i) (2005–06) states:

insurer to reduce the limit of underinsured motorist (UIM) coverage by "[a]mounts paid [to an insured] by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made," permit an insurer to reduce the UIM limit by the amount paid to an insured by a non-UIM tortfeasor? We hold that § 632.32(5)(i)1. does allow an insurer to reduce the limit of UIM liability by the amount paid to an insured by a non-UIM tortfeasor. Second, does the reducing clause in the policy issued by Rural unambiguously comply with § 632.32(5)(i)1.? We hold that the language does unambiguously comply with § 632.32(5)(i)1. Accordingly, we affirm the court of appeals.

## I

¶ 3. On December 21, 2002, Marotz rode as a passenger in the vehicle of Arthur E. Hallman, Jr. (Hallman) as Hallman drove southbound on County Highway J in Shawano County. Hallman entered the intersection of County Highway J and State Highway 29 without stopping at the posted stop sign. Donald J.

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise stated.

Hilgemann (Hilgemann), who was driving eastbound on State Highway 29, struck Hallman's vehicle. As a result of the collision, Marotz sustained injuries. The injuries resulted in more than $250,000 in medical bills.

¶ 4. Hallman's vehicle was insured by a liability insurance policy, which ACUITY, a mutual insurance company (ACUITY), issued with a limit of $25,000 per person. Hilgemann's vehicle was also insured by a liability insurance policy, which IMT Insurance Company (Mutual) (IMT) issued with a limit of $250,000.

¶ 5. Marotz's parents, Joann K. and Orland O. Marotz, had a policy issued by Rural in effect at the time of the accident. Their policy provided UIM coverage for any "family member," such as Marotz.[4] The UIM coverage provided a limit of liability of $100,000 per person.

¶ 6. The personal auto policy declarations provided the limits of liability for the various coverages included in the policy, as well as the premium for each. Before listing the limit of liability for the uninsured motorist (UM) coverage and UIM coverage, the following statement appeared: "THE LIMITS OF LIABILITY FOR THE FOLLOWING COVERAGES ARE PER POLICY LIMITS AND SHALL BE REDUCED AS A RESULT OF YOUR RECEIVING AMOUNTS FROM OTHER SOURCES BECAUSE OF YOUR 'BODILY INJURY.' "

¶ 7. The policy included an endorsement pertaining to UIM coverage in Wisconsin. The endorsement began by noting that "[w]ith respect to the coverage

---

[4] In the definitions section of the personal auto policy, the following appears: " 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

provided by this endorsement, the provisions of the policy apply unless modified by the endorsement." Under an "INSURING AGREEMENT" heading, the endorsement stated the following:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
>
> 1. Sustained by an "insured"; and
>
> 2. Caused by the accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."
>
> We will pay under this coverage only if 1. or 2. below applies:
>
> 1. The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or
>
> 2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bodily injury liability bonds or policies and we:
>
>     a. Have been given prompt written notice of such tentative settlement; and
>
>     b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

The endorsement also stated that " 'Underinsured motor vehicle' means a land motor vehicle or trailer of any

type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." Because Hallman's vehicle had a liability coverage limit less than $100,000 (i.e., the limit of UIM liability in Marotz's policy), it constituted an "underinsured motor vehicle."

¶ 8. Under a "LIMIT OF LIABILITY" heading, the endorsement included a reducing clause. It stated the following:

> The limit of liability shall be reduced by all of sums:
>
> 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and
>
> 2. Paid or payable because of the "bodily injury" under any of the following or similar law:
>
>     a. Workers' compensation law; or
>
>     b. Disability benefits law.

Under the same "LIMIT OF LIABILITY" heading, the following appeared: "We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible."

¶ 9. Marotz filed a UIM claim with Rural. Rural denied the claim. It asserted that the policy's reducing clause applied to the payments made by ACUITY (i.e., $25,000 on behalf of Hallman) and IMT (i.e., $90,000 on behalf of Hilgemann), and therefore the payments Marotz received exceeded the $100,000 limit of UIM

liability. Conversely, Marotz argued only ACUITY's payment on behalf of Hallman was subject to the reducing clause, meaning Rural needed to pay Marotz at least $75,000 in UIM benefits.

¶ 10. Marotz commenced litigation and moved for declaratory judgment with regard to the insurance policy issued by Rural. He requested that the circuit court declare that (1) Rural was not entitled to reduce the limit of the UIM liability by the $90,000 that IMT paid on behalf of Hilgemann and (2) the policy's reducing clause was ambiguous when considered in the context of the entire policy and could not be enforced with regard to payments made by ACUITY and IMT.

¶ 11. The circuit court ruled that the reducing clause complied with § 632.32(5)(i)1., that the reducing clause was not ambiguous and was thus enforceable, and that Rural was entitled to reduce the $100,000 limit of UIM liability by ACUITY's $25,000 payment and IMT's $90,000 payment. The court entered a judgment dismissing Marotz's complaint against Rural.

¶ 12. Marotz appealed to the court of appeals, which affirmed the circuit court. The court of appeals concluded that Marotz's policy had an unambiguous reducing clause that permitted Rural to reduce the amount it paid to Marotz by the amount Marotz received from both Hallman's insurer and Hilgemann's insurer. It also concluded that no contextual ambiguity existed when viewing the reducing clause in the context of the entire policy. Finally, it concluded that prior cases interpreting § 632.32(5)(i)1. did not prevent Rural from reducing its obligation by the payment Marotz received from a non-UIM tortfeasor.[5]

_____

[5] The court of appeals filed its decision in this case within a month of filing a decision in *State Farm Mutual Automobile*

¶ 13. Marotz filed a petition for review with this court, which was granted.

## II

¶ 14. This review presents two issues. First, does Wis. Stat. § 632.32(5)(i)1. permit an insurer to reduce the UIM limit by the amount paid by a non-UIM tortfeasor? Second, does the reducing clause in the policy issued by Rural unambiguously comply with § 632.32(5)(i)1.? Because Rural's policy must conform with § 632.32(5)(i)1., we focus initially on the statute. *See Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 13, 232 Wis. 2d 749, 606 N.W.2d 162.

A. Wisconsin Stat. § 632.32(5)(i)1.

¶ 15. We first address whether Wis. Stat. § 632.32(5)(i)1. permits an insurer to reduce the limit of UIM liability by the amount paid to an insured by a non-UIM tortfeasor. This issue involves statutory interpretation and the application of a statute to specific

*Insurance Company v. Bailey*, No. 2003AP2482, unpublished slip op. (Wis. Ct. App. December 1, 2005). In *Bailey*, the court considered the same issues, but interpreted § 632.32(5)(i)1. differently. The court held that § 632.32(5)(i)1. does not permit an insurer to reduce the limits of UIM liability by amounts the insured received from non-UIM tortfeasors. Additionally, the court held that the reducing clause in the policy issued by State Farm Mutual Automobile Insurance Company (State Farm) was unambiguous in the context of the entire policy, which allowed State Farm to reduce the limit of UIM liability by payments the insured received from a UIM tortfeasor. *Id.*, ¶ 1. State Farm and Bailey both filed a petition for review with this court, which were granted.

facts, which are questions of law that we review de novo. *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶ 16. As a preliminary matter, Rural contends that Marotz waived this issue. Before the circuit court and the court of appeals, Marotz did not argue that § 632.32(5)(i)1. was ambiguous or that a literal reading of it would create an absurd result. Marotz focused his argument on the validity of the reducing clause in Rural's policy. As a general rule, "issues not raised in the circuit court will not be considered for the first time on appeal." *Apex Elecs. Corp. v. Gee,* 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). Because this rule does not relate to the jurisdiction of appellate courts, an appellate court may use its discretion to hear an issue not raised in the circuit court. *Id.* Specifically, "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address the issue." *Id.*

¶ 17. The issue of the proper interpretation of § 632.32(5)(i)1. is one that satisfies the *Apex* criteria. First, the proper interpretation of § 632.32(5)(i)1. is a question of law. Second, both parties fully briefed the issue. Finally, there is sufficient public interest in clarifying this court's interpretation of § 632.32(5)(i)1. Accordingly, the court will exercise its discretion and address the issue.

¶ 18. Whether § 632.32(5)(i)1. permits an insurer to reduce the limit of UIM liability by the amount paid

to an insured by a non-UIM tortfeasor turns on our interpretation of the statute. To determine the proper interpretation of statutory language, the court begins with the language of the statute. *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. In interpreting a statute, courts give effect to every word so that no portion of the statute is rendered superfluous. *Janssen v. State Farm Mut. Auto. Ins. Co.,* 2002 WI App 72, ¶ 13, 251 Wis. 2d 660, 643 N.W.2d 857. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal,* 271 Wis. 2d 633, ¶ 46. We assume that the statutory language expresses the legislature's intent. *Id.,* ¶ 44. When statutory language manifests a clear meaning, it is unnecessary to consult extrinsic sources to ascertain the legislature's intent, such as legislative history. *Id.,* ¶ 46.

■

¶ 19.   When a statute is ambiguous, courts look to extrinsic sources to ascertain the legislature's intent, such as legislative history. *Kalal,* 271 Wis. 2d 633, ¶ 51; *Teschendorf,* 293 Wis. 2d 123, ¶ 13. Ambiguity exists only when a statute reasonably gives rise to two or more interpretations. *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 25, 260 Wis. 2d 633, 660 N.W.2d 656. Mere disagreement about the meaning of the statute is not enough to constitute ambiguity. *Kalal,* 271 Wis. 2d 633, ¶ 47. Although courts reaching contradictory interpretations of the same statute may be indicative of ambiguity, *Teschendorf,* 293 Wis. 2d 123, ¶ 19, it does not necessarily evidence ambiguity. *See e.g., Milwaukee Metro. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 70–72,

375 N.W.2d 648 (1985) (concluding that a statute is unambiguous after noting the contradictory interpretations of the statute by two court of appeals decisions). Differing interpretations of the same statute may be caused by one court's error, rather than ambiguity. *Id.*

¶ 20. The language of § 632.32(5)(i)1. has previously been found to be unambiguous. *Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 660, ¶ 17, 236 Wis. 2d 113, 613 N.W.2d 557; *Janssen,* 251 Wis. 2d 660, ¶ 15. In *Dowhower,* the court interpreted § 632.32(5)(i)1. in the context of an accident involving an underinsured motorist and an injured party with UIM coverage. The court noted that § 632.32(5)(i)1. "plainly allows a motor vehicle insurance contract to state that the maximum amount that the insurer will pay under the policy will be setoff by amounts paid by a tortfeasor." *Dowhower,* 236 Wis. 2d 113, ¶ 17.

¶ 21. Because every possible scenario cannot be anticipated by the words selected by the legislature, an unambiguous statute in one context may be ambiguous in another. *Teschendorf,* 293 Wis. 2d 123, ¶ 20. In this case, the question is whether § 632.32(5)(i)1. becomes ambiguous in the context of an accident involving an underinsured motorist (i.e., Hallman), an insured motorist (i.e., Hilgemann), and an injured party with UIM coverage (i.e., Marotz). Marotz argues that in the context of this case, § 632.32(5)(i)1. is ambiguous. Rural contends the context of this case does not change the court's previous conclusion that § 632.32(5)(i)1. is unambiguous.

¶ 22. We agree with Rural: the context of this case does not render § 632.32(5)(i)1. ambiguous. Wisconsin Stat. § 632.32(5)(i) reads as follows:

443

(5) Permissible Provisions. . . .

. . . .

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

Our examination of the language of the statute, and the context in which it appears, leads us to conclude that § 632.32(5)(i)1. does not prohibit an insurer from reducing the limit of UIM liability by an amount paid to an insured by a non-UIM tortfeasor, as long as the payment otherwise falls within the scope of the subsection.

¶ 23.    The structure of § 632.32(5)(i) provides that only payments that fall within the scope of one of the three subsections will reduce the limit of UIM liability. It states, "[a] policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply," followed by the list of types of payments that will reduce the limit of UIM liability. Wis. Stat. § 632.32(5)(i). In *Welin v. American Family Mutual Insurance Co.,* 2006 WI 81, ¶ 49, 292 Wis. 2d 73, 717

N.W.2d 690, the court noted that "[w]e have explained numerous times that the insured's purpose in purchasing a UIM policy is to purchase a predetermined, fixed level of UIM recovery that is arrived at by combining payments from all sources." *See also Van Erden v. Sobczak,* 2004 WI App 40, ¶ 32, 271 Wis. 2d 163, 677 N.W.2d 718. As we noted in *Teschendorf,* "[t]he words 'that apply' are a protection against payments that do not apply and thus do not reduce coverage." *Teschendorf,* 293 Wis. 2d 123, ¶ 53. Accordingly, interpretations of the subsections determine whether a payment will reduce UIM limits. In this case, our interpretation of § 632.32(5)(i)1. determines whether payments to an insured from non-UIM tortfeasors are ones "that apply."

¶ 24. Wisconsin Stat. § 632.32(5)(i)1. limits the scope of payments that will reduce the limit of UIM liability to "[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made." The phrase "legally responsible" means parties that caused the bodily injury or death at issue (i.e., tortfeasors). *Janssen,* 251 Wis. 2d 660, ¶ 17. In this case, Hallman and Hilgemann were both tortfeasors, making them persons that may be legally responsible.

¶ 25. The words "[a]mounts paid by or on behalf of any person or organization" restrict payments that will reduce the limit of UIM liability to those made by a tortfeasor, or by any other person or organization on the tortfeasor's behalf. The legislature's decision to modify "person or organization" with the word "any" indicates broad application when it comes to the persons and organizations that fall within the scope of the provision. It does not suggest that a "person or organization" need be a UIM tortfeasor for their payment to reduce the insured's UIM coverage. In this case, ACU-

ITY paid $25,000 on behalf of Hallman and IMT paid $90,000 on behalf of Hilgemann for Marotz's bodily injuries that he suffered in the accident at issue in this case.

¶ 26.  The scope of § 632.32(5)(i)1. is limited by the phrase "for the bodily injury or death for which payment is made." The legislature's inclusion of the phrase "for the bodily injury or death for which payment is made" resolves a potential ambiguity as to which "[a]mounts paid by or on behalf of any person or organization that may be legally responsible" may reduce the limit of UIM liability. It ensures that coverage limits may not be reduced by amounts paid by a person who may be legally responsible in the accident, but whose payment is not made for a bodily injury arising from the accident.[6] The phrase "for the bodily injury or death for which payment is made" limits the scope of § 632.32(5)(i)1. by establishing the requisite purpose of the payment made to the insured that must exist before the provision applies.

---

[6] The phrase "for the bodily injury or death for which the payment is made" prevents reductions in a number of different scenarios. For instance, it would prevent a reduction where an accident occurs between persons who had previously entered into an unrelated purchase agreement, and where the subsequent payment from the buyer to the seller is attributable to that purchase agreement and not to injuries arising from the accident. The phrase would also prevent reductions in a situation such as where the amounts paid by a person who may be legally responsible for an injury other than the one for which the payment is made. Such a situation might arise where Tortfeasor 1 settles a prior claim with an injured insured by paying current hospital costs for injuries arising from an accident involving Tortfeasor 2 and which costs would be properly attributable to Tortfeasor 2.

¶ 27.  The scope of § 632.32(5)(i)1. is also limited by the phrase "from any one accident" in § 632.32(5)(i). This language limits payments that will reduce UIM limits to those that relate to the injury or death from the one accident at issue in the case.[7] The phrase "from any one accident" limits the scope of § 632.32(5)(i)1. by establishing the requisite cause of the injury or death that must exist before the provisions of § 632.32(5)(i) apply.

¶ 28.  This case does not present an example of an unambiguous statute being ambiguous in a different context. Based on our review of the language of § 632.32(5)(i)1., with the context of this case in mind, we conclude that excluding the payments of non-UIM tortfeasors from reducing clauses is not required by the statute.

¶ 29.  Our interpretation of § 632.32(5)(i)1. is consistent with other statutes addressing UIM coverage, specifically Wis. Stat. § 632.32(4m). Wisconsin Stat. § 632.32(4m)(a)2. requires that insurers give the insured notice of the availability of UIM coverage. Wisconsin Stat. § 632.32(4m)(d) provides that if an insured accepts UIM coverage, the insurer must include limits of at least $50,000 per person and $100,000 per accident. In *Dowhower*, we explained the interplay of the provisions of § 632.32(4m) and § 632.32(5)(i)1.: "In total, these statutes establish that the UIM coverage limit purchased by the insured is reached by the combination of contributions from all legally responsible sources. The type of reducing clause authorized in § 632.32(5)(i)1. is neither

---

[7] For instance, if a tortfeasor pays the injured party $10,000 for an injury he caused to her left leg in an October accident, that amount could not be used to reduce the UIM insurer's liability for the injury she incurred to her right arm in a separate November accident.

ambiguous nor contrary to public policy." *Dowhower,* 236 Wis. 2d 113, ¶ 20. There is no statutory language indicating that UIM status would alter the court's previous assessment that the statutes establish that contributions from all legally responsible sources are to be considered in reaching the insured's UIM coverage limit.

¶ 30. We have previously discussed various theories that may underlie an insured's UIM coverage. *State Farm Mut. Auto. Ins. Co. v. Langridge,* 2004 WI 113, ¶¶ 17–18, 275 Wis. 2d 35, 683 N.W.2d 75; *Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶¶ 17–24, 255 Wis. 2d 61, 647 N.W.2d 223; *Dowhower,* 236 Wis. 2d 113, ¶ 18. In *Dowhower,* the court quoted a treatise that stated " 'the purpose of underinsured motorist coverage is solely to put the insured in the same position he [or she] would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured.' " *Dowhower,* 255 Wis. 2d 61, ¶ 18 (quoting 3 Irvin E. Schermer, *Automobile Liability Insurance* § 57.01, p. 57–2 (3d ed. 1995)). The court has also noted that "[i]n recent years, the legislature has authorized policies embodying [this] view, and courts have recognized the legitimacy of these policies." *Langridge,* 275 Wis. 2d 35, ¶ 18 (citing *Schmitz,* 255 Wis. 2d 61, ¶ 73; *Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 25, 245 Wis. 2d 134, 628 N.W.2d 916; *Dowhower,* 236 Wis. 2d 113, ¶ 33.)

¶ 31. We discussed the various theories of UIM coverage to highlight that there are different types of reducing clauses that the legislature deemed permissible in enacting § 632.32(5)(i)1. We did not discuss the theories to articulate the legislative purpose of § 632.32(5)(i)1. in every context that may arise. By taking our previous discussions out of context and failing to appreciate we were quoting a treatise, one

may conclude that this court has already decided that the limit of UIM liability may be reduced only by payments from an UIM tortfeasor. That would be a mistake. This is the first case we have addressed whether § 632.32(5)(i)1. allows an insurer to reduce the limit of UIM liability by payments made to the insured by a non-UIM tortfeasor.

¶ 32.  Based on the plain language of the statute and the context in which it appears, we hold that § 632.32(5)(i)1. does allow an insurer to reduce the limit of UIM liability by the amount paid by a non-UIM tortfeasor.[8]

## B.  Policy Language

■■■■■■■

¶ 33.  We now turn to whether the reducing clause in the policy issued by Rural unambiguously complies with § 632.32(5)(i)1. The interpretation of an insurance policy presents a question of law that we review de novo. *Folkman v. Quamme,* 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. Construing the provisions of an insurance policy requires an examination of the specific provisions at issue and an assessment of whether contextual ambiguity exists. *Schmitz,* 255 Wis. 2d 61, ¶ 61.

---

[8] The dissent finds the court's interpretation of Wis. Stat. § 632.32(5)(i)1. "surprising," dissent, ¶ 49, and "problematic," *id.,* ¶ 52. It renders parts of the statute "superfluous." *Id.,* ¶¶ 52, 58–59. It conjures up "peculiar" scenarios. *Id.,* ¶ 55. It "ignores the precedent." *Id.,* ¶ 67. It "rests on a mistake." *Id.* Obviously, the court disagrees with the dissent's assessment. Others may ponder to which opinion those labels most aptly apply.

1. The reducing clause in the policy issued by Rural

¶ 34.  General principles of contract construction control the interpretation of an insurance contract. *Taylor,* 245 Wis. 2d 134, ¶ 10 (citing *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). Discerning and giving effect to the intent of the parties is the objective. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1 (1994). Toward that end, courts give the common, ordinary meaning to the policy language (i.e., what the reasonable person in the insured's position would understand them to mean). *Folkman,* 264 Wis. 2d 617, ¶ 17. Any ambiguity that may exist is construed in favor of the insured, while exclusions in coverage are narrowly construed against the insurer. *Id.,* ¶ 16 (citing *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990)). Ambiguity arises if the language of the policy is "susceptible to more than one reasonable construction." *Id.* The resulting interpretation of the policy's language "should advance the insured's reasonable expectations of coverage." *Taylor,* 245 Wis. 2d 134, ¶ 10.

¶ 35.  The reducing clause in this case states that the limit of liability will be reduced by amounts "[p]aid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." The common, ordinary language establishes that the meaning of this language mimics the meaning of § 632.32(5)(i)1. *See Ruenger v. Soodsma,* 2005 WI App 79, ¶ 1, 281 Wis. 2d 228, 695 N.W.2d 840 (concluding that a Rural Mutual Insurance Company reducing clause identical to the one in this case complied with § 632.32(5)(i)1.).

¶ 36. The phrasing of the reducing clause differs slightly from the language used in § 632.32(5)(i)1., but the difference does not affect the meaning. While § 632.32(5)(i)1. uses the phrase "for the bodily injury or death for which the payment is made," the first subsection uses "because of the 'bodily injury.' " Both phrases limit the scope of the provision to payments made for the injuries arising from the accident. Accordingly, like the statutory language, the scope of the reducing clause is set by whether a payor may be legally responsible, not the payor's UIM status.

¶ 37. The reducing clause unambiguously complies with § 632.32(5)(i). Based on the common, ordinary language, a reasonable person in the insured's position would understand the clause to have the effect of reducing the UIM liability limit by payments made by or on behalf of those legally responsible for the accident at issue, regardless of their UIM status.

2. The reducing clause in the context of the entire policy

¶ 38. Our inquiry does not end because of our conclusion that the language of the reducing clause is unambiguous. *Schmitz,* 255 Wis. 2d 61, ¶ 42. As the court noted in *Folkman,* "[s]ometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement." *Folkman,* 264 Wis. 2d 617, ¶ 21. The essence of the agreement may reveal that an unambiguous provision read in isolation is ambiguous in the context of other provisions of the policy. *Schmitz,* 255 Wis. 2d 61, ¶ 61.

¶ 39. Contextual ambiguity exists when a provision is reasonably susceptible to more than one con-

struction when read in the context of the policy's other language. *Folkman,* 264 Wis. 2d 617, ¶ 29. "To prevent contextual ambiguity, a policy should avoid inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternative meanings." *Id.,* ¶ 31. For inconsistencies to alter the construction of an otherwise unambiguous provision, the inconsistencies must be "material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Id.,* ¶ 32.

¶ 40.   Other provisions of the policy in this case do not render the reducing clause reasonably susceptible to more than one construction. The policy at issue is 34 pages. It begins with declarations, which is "generally the portion of an insurance policy to which the insured looks first." *Schmitz,* 255 Wis. 2d 61, ¶ 62. On the third page of the declarations, the limits of liability for the various coverages are listed, as well as the premium for each. Before listing the limits of liability for UM and UIM coverage, the following statement appears: "THE LIMITS OF LIABILITY FOR THE FOLLOWING COVERAGES ARE PER POLICY LIMITS AND SHALL BE REDUCED AS A RESULT OF YOUR RECEIVING AMOUNTS FROM OTHER SOURCES BECAUSE OF YOUR 'BODILY INJURY.' " The "other sources" referred to in the statement are provided in more detail in the reducing clause. As mentioned above, the reducing clause is provided in the endorsement related to UIM coverage in Wisconsin.

¶ 41.   Although the policy does not include an index or identify endorsements by their title, on the bottom of the first page of declarations, the forms and attachments are listed by their numbers. For instance, the UIM coverage endorsement is listed as

"PP0427(10–01)." On the top right corner of the UIM coverage endorsement the following appears: "PP 04 27 10 01." The spacing is different, and there is a lack of parenthesis or a hyphen for (10–01), but a reasonable person in the insured's position would conclude that "PP0427(10–01)" and "PP 04 27 10 01" refer to the same document.

¶ 42.   The endorsement pertaining to UIM coverage in Wisconsin begins by noting that "[w]ith respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement." Under the "INSURING AGREEMENT" heading, it states the following:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
>
> 1.   Sustained by an "insured"; and
>
> 2.   Caused by the accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."
>
> We will pay under his coverage only if 1. or 2. below applies:
>
> 1.   The limits of liability under any bodily injury liability bonds or policies applicable to the "under-insured motor vehicle" have been exhausted by payment of judgments or settlements; or
>
> 2.   A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bodily injury liability bonds or policies and we:

    a.   Have been given prompt written notice of such tentative settlement; and

    b.   Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

The endorsement also states that " 'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

¶ 43.   Read in isolation, one may conclude that the language of the first provision under the "INSURING AGREEMENT" heading indicates that the UIM coverage relates to payments made from the UIM tortfeasor. However, the point of contextual ambiguity is not to read provisions in isolation. *Folkman,* 264 Wis. 2d 617, ¶ 21 (stating that "[t]he language of a policy should not be made ambiguous by isolating a small part from the context of the whole"). Subsequent to the "LIMIT OF LIABILITY" heading, the policy provides exclusions. The exclusions limit the scope of UIM coverage. Similarly, the reducing clause appears subsequent to the "INSURING AGREEMENT" heading. A reasonable person in the position of the insured would understand that the reducing clause, after the provisions under "INSURING AGREEMENT," would affect the payments he or she may receive under the policy.

¶ 44.   After the reducing clause, the policy states the following: "We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible." Like the

reducing clause, this provision addresses limits on the payments the insured will receive. A reasonable person in the position of the insured would appreciate that the provisions under the "INSURING AGREEMENT" address the broad terms of the coverage and then the subsequent provisions define the specifics of the coverage.

¶ 45. Considering context, Rural's policy "clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Dowhower*, 236 Wis. 2d 113, ¶ 33. In this case, the combination of the notification in the declarations and the reducing clause that complies with § 632.32(5)(i)1. create the requisite clarity for the reducing clause to be deemed enforceable. Accordingly, we hold that the reducing clause in the policy issued by Rural unambiguously complies with § 632.32(5)(i)1.

### III

¶ 46. Based on the plain language of § 632.32(5)(i)1., UIM insurers may reduce the limit of UIM liability by amounts an insured receives from or on behalf of tortfeasors, regardless of the payors' UIM status. The reducing clause included in the policy issued by Rural unambiguously sets forth the coverage that Marotz's parents purchased, making it enforceable. Because the payments Marotz received from ACUITY and IMT exceed the limit of UIM liability in the Rural policy, Rural need not pay any benefit to Marotz.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. ANN WALSH BRADLEY, J. (*dissenting*). Despite the conflicting interpretations of the court of appeals and without addressing the petitioner's interpretation of the statute, the majority declares Wis. Stat. § 632.32(5)(i)1. (2005–06) unambiguous and its meaning "plain." No matter that the interpretation that the majority finds obvious renders statutory language superfluous, and no matter that it conflicts with this court's prior interpretation of the statute.

¶ 48. I disagree with the majority's conclusion that Wis. Stat. § 632.32(5)(i)1. unambiguously permits insurers to reduce UIM limits by payments made from non-UIM tortfeasors. Because the majority's interpretation renders statutory language superfluous, and because it fails to follow this court's prior decisions interpreting the statute, I respectfully dissent.

I

¶ 49. It is surprising that the majority so readily claims that the meaning of § 632.32(5)(i) is unambiguous. The court of appeals has reached diametrically opposed conclusions as to whether that section allows insurers to reduce UIM limits by payments made to the insured by non-UIM tortfeasors. *See* majority op., ¶ 12 n.5.

¶ 50. In *State Farm Mut. Auto. Ins. Co. v. Bailey,* the court of appeals concluded that § 632.32(5)(i)1. *does not* allow reduction of UIM limits by payments made by non-UIM tortfeasors. No. 2003AP2482, unpublished slip op., ¶ 1 (Wis. Ct. App. December 1, 2005). Three weeks after *Bailey* was decided, the court of appeals reversed course and concluded that the section *does* allow such reductions. *Marotz v. Hallman,* No. 2005AP1579, unpublished slip op., ¶ 16 (Wis. Ct. App. December 22, 2005).

456

¶ 51.    We have previously determined that when courts reach contradictory interpretations of a statute, it "is indicative of ambiguity." *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 19, 293 Wis. 2d 123, 717 N.W.2d 258 (citing *Stockbridge Sch. Dist. v. Dep't of Public Instruction Sch. Dist. Boundary Appeal Bd.*, 202 Wis. 2d 214, 222, 550 N.W.2d 96 (1996)). The majority's determination that § 632.32(5)(i)1. is unambiguous cannot be squared with the fact that two well-reasoned court of appeals opinions have interpreted that section in two different and incompatible ways.

## II

¶ 52.    In addition to disregarding the opposing interpretations of the court of appeals, the majority's interpretation of § 632.32(5)(i)1. is problematic because it renders part of the statute superfluous. Section 632.32(5)(i) provides as follows:

> (i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting <u>from any one accident</u> shall be reduced by any of the following that apply:
>
> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death <u>for which the payment is made.</u>
>
> 2. Amounts paid or payable under any worker's compensation law.
>
> 3. Amounts paid or payable under any disability benefits laws.

(Emphasis added.)

¶ 53.    The petitioner contends that the phrase "for which the payment is made" refers to payments made by an insurer under the applicable UM or UIM cover-

age. Without addressing the petitioner's interpretation, the majority asserts that the statute is unambiguous. Majority op., ¶ 22. It implicitly adopts the view that "for which the payment is made" refers to "[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death." What it fails to explain is why the words "for which the payment is made" are in the statute in the first instance.

¶ 54. The majority asserts that subsection 1. contains the words "for the bodily injury or death for which the payment is made" to "resolve[] a potential ambiguity." *Id.*, ¶ 26. Specifically, it precludes insurers from reducing UIM limits "by amounts paid by a person who may be legally responsible in the accident, but whose payment is not made for a bodily injury arising from the accident." *Id.* No one else advances this interpretation —and for good reason.

¶ 55. The examples given to support the majority's novel interpretation are peculiar. First, the majority conjures a scenario in which "an accident occurs between persons who had previously entered into an unrelated purchase agreement, and where the subsequent payment from the buyer to the seller is attributable to that purchase agreement and *not [attributable] to injuries arising from the accident.*" *Id.*, ¶ 26 n. 6 (emphasis added).

¶ 56. Second, the majority maintains that the phrase prevents payments made to the insured by a tortfeasor in an entirely separate accident. It imagines a situation in which "Tortfeasor 1 settles a prior claim with an injured insured by paying current hospital costs for injuries arising from an accident involving Tortfeasor 2 and which costs would be properly attributable to Tortfeasor 2." *Id.*

¶ 57. These scenarios are not only peculiar, but they are precluded by other language in the statute. Section 632.32(5)(i) is explicit that reductions of UM and UIM limits pertain to coverage "resulting *from any one accident.*" There is therefore no "potential ambiguity" that UM or UIM limits could be reduced by payments resulting from an "unrelated purchase agreement" or arising out of another, unrelated accident as the majority maintains.

¶ 58. The majority's view that § 632.32(5)(i)1. includes the phrase "for the bodily injury or death for which the payment is made" to prevent reductions for payments made pursuant to *other* accidents and to events unrelated to any accident therefore renders that phrase superfluous. In doing so the majority violates a fundamental principle of statutory construction: "When construing statutes, meaning should be given to every word, clause and sentence in the statute, and a construction which would make part of the statute superfluous should be avoided wherever possible." *Hutson v. State Pers. Comm'n*, 2003 WI 97, ¶ 49, 263 Wis. 2d 612, 665 N.W.2d 212 (quoting *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981)).

¶ 59. The conclusion that the majority's interpretation renders the phrase "for the bodily injury or death for which the payment is made" superfluous is supported by the fact that the phrase is appended only to subsection 1. Subsections 2. and 3. permit reductions of UIM limits for worker's compensation and disability payments. However, those subsections do not explicitly limit reductions for worker's compensation and disability payments "for the bodily injury or death for which the payment is made." Such language is unnecessary precisely because § 632.32(5)(i) is restricted to payments "from any one accident."

¶ 60.  In contrast, the interpretation of the statute proffered by the petitioner avoids rendering part of § 632.32(5)(i) superfluous. According to the petitioner's interpretation the first part of § 632.32(5)(i)1., "[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death . . .," allows that UIM coverage may be reduced by payments made by or on behalf of tortfeasors. If subsection 1. ended there, it would be sufficient to support the majority's interpretation.

¶ 61.  Under the petitioner's interpretation, the addition of "for which the payment is made" refers to payments made by an insurer under the applicable UM or UIM coverage. It therefore serves to limit which payments by or on behalf of tortfeasors may reduce UM or UIM coverage. Specifically, it provides that policies may reduce coverage limits only for payments made by or on behalf of tortfeasors whose actions require the insurer to make payments under § 632.32(5)(i)—UIM and UM motorists.

¶ 62.  Thus, the petitioner's interpretation also explains why § 632.32(5)(i) contains the phrase "from any one accident" while at the same time § 632.32(5)(i)1. contains the phrase "for which the payment is made." Further, it explains why subsections 2. and 3. do not contain the phrase "for which the payment is made." The phrase is contained in subsection 1. as a way to restrict its application to payments made by or on behalf of UM or UIM tortfeasors. However, no such limitation is required with respect to worker's compensation and disability payments.

¶ 63.  The majority has provided no explanation as to why the petitioner's interpretation is unreasonable, despite the advantage it holds over the majority's view insofar as it does not render part of the statute super-

fluous. In light of this failure to explain an alternative interpretation, and in light of the contradictory court of appeals decisions, I simply cannot see why the majority maintains that § 632.32(5)(i) is "plain" and unambiguous where its interpretation of the section violates a fundamental principle of statutory construction.

## II

¶ 64.   The majority's view also conflicts with this court's established interpretation of § 632.32(5)(i). In *Dowhower v. W. Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 18, 236 Wis. 2d 113, 613 N.W.2d 557, we concluded that "the purpose of underinsured motorist coverage is solely to put the insured in the same position he (or she) would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." Two years later in *Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶ 18, 255 Wis. 2d 61, 647 N.W.2d 223, we quoted this passage from *Dowhower* and again embraced the same interpretation of the legislative purpose of UIM coverage.

¶ 65.   More recently in *State Farm Mut. Auto. Ins. Co. v. Langridge,* 2004 WI 113, 275 Wis. 2d 35, 683 N.W.2d 75 (citations omitted), we reiterated our determination that "UIM coverage is designed to put the insured in the same position as he or she would· have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." *Id.,* ¶ 17 (internal quotations and brackets omitted)(citations omitted). The *Langridge* court explained that an insured "ought reasonably to expect that the insurer promises only to insure for the difference between the insured's higher UIM limit and the tortfeasor's lower liability limit." *Id.,* ¶ 21.

¶ 66. The consistent interpretation of *Dowhower, Badger Mutual,* and *Langridge* would entitle Marotz to coverage that pays the difference between the insured's higher UIM limit and the underinsured's lower liability limit. Under the *Dowhower, Badger Mutual,* and *Langridge* interpretation of UIM coverage, Marotz would be entitled to $75,000 of coverage under the Rural policy (that is, the $100,000 UIM limit minus the $25,000 he received from Hallman's insurer). Under the majority's new interpretation of UIM coverage, Marotz does not receive even a penny under the Rural policy. Clearly, this does not put him in the same position he would have occupied had Hallman's liability limits been the same as Marotz's UIM limits.

¶ 67. Without overruling or withdrawing any language from our prior cases, the majority simply ignores the precedent. It instead adopts a new interpretation. It now contends that "the statutes establish that contributions from all legally responsible sources are to be considered in reaching the insured's UIM coverage limit" and that this includes payments by non-UIM tortfeasors. Majority op. ¶ 29.[1] The majority's contention, however, rests on a mistake.

---

[1] The majority's contention that that this court discussed theories of UIM coverage in *Dowhower, Badger Mutual,* and *Langridge* merely to "highlight" different sorts of reducing clauses permissible under Wis. Stat. § 632.32(5)(i)1. is incorrect. Majority op., ¶ 31. In *Badger Mutual,* for example, we stated that insurers providing UIM policies that reduce UIM limits by payments from other sources "are required to make clear to purchasers of UIM coverage that they are purchasing coverage *that will put them in the same position they would be in if the underinsured tortfeasor had liability limits equal to the amount of UIM coverage the insured purchased." Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶ 38, 255 Wis. 2d 61, 647 N.W.2d 223(emphasis added). The majority's view renders this requirement useless.

¶ 68.   UIM coverage limits may be reduced by only those sources recognized under § 632.32(5)(i).[2] Thus, whether Rural may reduce the amount of the petitioner's UIM coverage limits by payments from a non-UIM tortfeasor depends upon whether such payments are included under § 632.32(5)(i)1. That, however, is the very issue before the court. To support the conclusion that the amount of UIM coverage may be reduced by payments from non-UIM tortfeasors with the proposition that UIM coverage is arrived at by combining payments from all sources (i.e., all sources recognized under the statute) merely begs the question.

¶ 69.   For the reasons stated above, I conclude that the language of the statute is ambiguous. Questions of ambiguity aside, we should follow our precedent in interpreting it. Doing so requires following the principle that UIM coverage serves "to put the insured in the same position as he [or she], would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." *Langridge*, 275 Wis. 2d 35, ¶ 17. Under this principle, § 632.32(5)(i) does not permit an insurer to reduce the limit of UIM coverage by amounts paid to an insured by or on behalf of a non-UIM tortfeasor.

¶ 70.   Accordingly, I respectfully dissent.

¶ 71.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice LOUIS B. BUTLER, JR. join this dissent.

---

[2] For example, a policy could not reduce UIM coverage limits by amounts donated by others to aid one's recovery or given gratuitously by a benefactor. Wis. Stat. § 632.32(5)(i).