STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,
Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

Travis L. BAILEY,
Defendant-Respondent-Cross-Appellant-Cross
Petitioner.

Supreme Court

*No. 2003AP2482. Oral argument January 5, 2007.*
*—Decided July 10, 2007.*

2007 WI 90

(Also reported in 734 N.W.2d 386.)

For the defendant-respondent-cross-appellant-cross petitioner there were briefs by *Burton A. Strnad* and *Burton A. Strnad, S.C.,* Milwaukee, and oral argument by *Burton A. Strnad.*

For the plaintiff-appellant-cross-respondent-petitioner there were briefs by *Thomas E. Goss, Jr.* and *Mueller, Goss & Possi, S.C.,* Milwaukee, and oral argument by *Thomas E. Goss, Jr.*

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle,* Milwaukee, on behalf of Wisconsin Academy of Trial Lawyers.

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals decision,[1] which affirmed in part, reversed in part, and remanded with directions the judgment of Milwaukee County Circuit Court, Timothy G. Dugan, Judge. Judge Dugan entered an order that deemed the reducing clause in a policy issued by State Farm Mutual Automobile Insurance Company (State Farm) unenforceable, dismissed the bad faith claim of Travis L. Bailey (Bailey),[2] and declared that State Farm's liability to Bailey is for provable damages in excess of $62,000 up to State Farm's $50,000 underinsured motorist (UIM) limit.

---

[1] *State Farm Mut. Auto. Ins. Co. v. Bailey,* No. 2003AP2482, unpublished slip op. (Wis. Ct. App. December 1, 2005).

[2] Travis Bailey's bad faith claim was not the subject of appeal to the court of appeals or this court.

¶ 2. Two issues are before this court.[3] First, does Wis. Stat. § 632.32(5)(i)1. (2005–06),[4] which allows an insurer to reduce the limit of underinsured motorist (UIM) coverage by "[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made," permit an insurer to reduce the UIM limit by the amount paid by a non-UIM tortfeasor? We hold that § 632.32(5)(i)1. does allow an insurer to reduce the limit of UIM liability by the amount paid to an insured by a non-UIM tortfeasor. Second, does the reducing clause in the policy issued by State Farm unambiguously comply with § 632.32(5)(i)1.? We hold that the language unambiguously complies with § 632.32(5)(i)1.

¶ 3. Accordingly, we reverse the court of appeals in part and affirm the court of appeals in part. We reverse the court of appeals in its holding that Wis.

---

[3] The issues presented and our respective holdings are the same in this case and Marotz v. Hallman, 2007 WI 89, 302 Wis. 2d 428, 734 N.W.2d 411, which has been released the same day.

[4] Wisconsin Stat. § 632.32(5)(i) (2005–06) states:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise stated.

Stat. § 632.32(5)(i)1. does not permit an insurer to reduce the limits of UIM liability by payments the insured receives from non-UIM tortfeasors. We affirm the court of appeals in its holding that the reducing clause is unambiguous in the context of the entire policy.

I

¶ 4. On April 8, 1998, Bailey rode as a passenger in a vehicle driven by Adrian J. Levy (Levy). Levy's vehicle, traveling at a high rate of speed, proceeded through a red light. Leticia T. Regala's (Regala) vehicle had already entered the intersection and was struck by Levy's vehicle. As a result of the accident, Bailey sustained injuries.

¶ 5. Levy's vehicle was insured by a liability policy, which American Family Insurance Company (American Family) issued with a limit of $25,000 per person. Regala's vehicle was also insured by a liability policy issued by American Family, which had a limit of $250,000 per person. American Family made a payment of $25,000 to Bailey on behalf of Levy and a payment of $37,500 on behalf of Regala.

¶ 6. Bailey's mother, Loretta Bailey, had a policy issued by State Farm in effect at the time of the accident. Her policy provided UIM coverage for her relatives, such as her son.[5] The UIM coverage provided a limit of liability of $50,000 per person.

¶ 7. The declarations page of the policy listed the types of coverage included in the policy and the limits of liability for each. Included in the list was "UNIN-

---

[5] The policy defined "relative" as "a <u>person</u> related to <u>you</u> or <u>your spouse</u> by blood, marriage or adoption who lives with <u>you</u>. It includes <u>your</u> unmarried and unemancipated child away at school."

SURED MOTOR VEHICLE" as one of the coverages. Beneath the list of coverages and limits of liability, a list of exceptions and endorsements was provided. Included in the list was a document labeled 6083BB and entitled "AMENDMENTS TO UNINSURED MOTOR VEHICLE AND UNDERINSURED MOTOR VEHICLE COVERAGES."

¶ 8. The UIM section of the policy, as amended by the endorsement, provided the following:

> We will pay damages for <u>bodily injury</u> an <u>insured</u> is legally entitled to collect from the owner or driver of an <u>underinsured motor vehicle</u>. The <u>bodily injury</u> must be caused by accident arising out of the operation, maintenance or use of an <u>underinsured motor vehicle</u>.
>
> . . . .
>
> <u>Underinsured Motor Vehicle</u> – means a land motor vehicle:
>
> 1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
>
> 2. whose limits of liability for bodily injury liability:
>
> a. are less than the limits of liability of this coverage; or
>
> b. have been reduced by payments to *persons* other than the *insured* to less than the limits of liability of this coverage.

Levy's vehicle was a UIM vehicle because the liability limit of his coverage was $25,000 per person, which is less than the $50,000 liability limit of Bailey's UIM coverage. On the other hand, Regala's vehicle was not a

UIM vehicle because the liability limit of her coverage was $250,000 per person, which is more than the $50,000 liability limit of Bailey's UIM coverage.

¶ 9. The policy also included a reducing clause, which read as follows:

> 2. The most we will pay is the lesser of:
>
> a. the limits of liability of this coverage reduced by any of the following that apply:
>
> (1) the amount paid to the <u>insured</u> by or on behalf of any <u>person</u> or organization that may be legally responsible for the <u>bodily injury</u>; or
>
> (2) the amount paid or payable under any worker's compensation or disability benefits law; or
>
> b. the amount of damages sustained, but not recovered.

¶ 10. Bailey made a claim for UIM benefits against State Farm. State Farm denied that Bailey was entitled to collect on his claim. State Farm asserted that the reducing clause permitted it to reduce the $50,000 UIM liability limit by payments Bailey received from both Levy and Regala. Because the payments from both of them exceeded the $50,000 UIM liability limit, State Farm claimed it did not have to pay Bailey UIM benefits.

¶ 11. State Farm filed a complaint against Bailey, seeking a declaratory judgment from the court stating that it did not owe Bailey UIM benefits for the accident involving the collision between Levy and Regala. Bailey filed a counterclaim alleging that State Farm had acted in bad faith.

¶ 12. Both parties moved for summary judgment. The circuit court issued an order stating that the reducing clause on the policy issued by State Farm was unenforceable. It concluded that contextual ambiguity caused the reducing clause to be ambiguous because a reasonable person in the insured's position would not understand that the limits of UIM liability could be reduced by payments received from sources other than a UIM tortfeasor. The circuit court also dismissed Bailey's bad faith claim.

¶ 13. State Farm filed a motion to reconsider, which the court denied. The court also granted State Farm's motion for declaratory relief in which State Farm requested a ruling that its liability to Bailey is for provable damages in excess of $62,500 up to the $50,000 limit of UIM liability, based on the court's prior ruling that the reducing clause was unenforceable.

¶ 14. State Farm appealed to the court of appeals the circuit court's ruling that its reducing clause was unenforceable. Bailey cross-appealed the circuit court's ruling that State Farm's liability to Bailey is for provable damages in excess of $62,500 up to State Farm's $50,000 UIM limit. Bailey did not appeal his bad faith claim.

¶ 15. The court of appeals considered whether § 632.32(5)(i)1. permits the reducing clause to be construed in a way that permits State Farm to reduce its liability limit by the amount of payment Bailey received from Regala. It held that § 632.32(5)(i)1. does not permit a reducing clause to be construed in a way that permits an insurer to reduce its liability limit by the amount of payment received by an injured insured from a non-UIM tortfeasor. The court of appeals also considered whether State Farm's reducing clause complied with § 632.32(5)(i). Specifically, it concluded that clause

418

2.a. of the reducing clause was unambiguous in the context of the entire policy and clause 2.b. was valid.

¶ 16. The parties each petitioned this court for review, which was granted.

## II

¶ 17. This review presents two issues. First, does Wis. Stat. § 632.32(5)(i)1. permit an insurer to reduce the UIM limit by the amount paid to an insured by a non-UIM tortfeasor? Second, does the reducing clause in the policy issued by State Farm unambiguously comply with § 632.32(5)(i)1.? Because State Farm's policy must conform with § 632.32(5)(i)1., we focus initially on the statute. *See Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 13, 232 Wis. 2d 749, 606 N.W.2d 162.

A. Wisconsin Stat. § 632.32(5)(i)1.

■

¶ 18. We first address whether Wis. Stat. § 632.32(5)(i)1. permits an insurer to reduce an insured's UIM limit by the amount paid to an insured by a non-UIM tortfeasor. This issue involves statutory interpretation and the application of a statute to specific facts, which are questions of law that we review de novo. *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶ 19. In *Marotz v. Hallman*, 2007 WI 89, 302 Wis. 2d 428, 734 N.W.2d 411, which we issued today, we concluded that § 632.32(5)(i)1. does allow an insurer to reduce the UIM limit by the amount paid to an insured by a non-UIM tortfeasor. Although an unambiguous statute in one context may be ambiguous in another, *Teschendorf,* 293 Wis. 2d 123, ¶ 20, that does not apply

in this case. The context of this case and *Marotz* is the same. Both cases involved an injured insured receiving a payment from a UIM tortfeasor and a non-UIM tortfeasor.

¶ 20. Applying our interpretation from *Marotz*, 734 Wis. 2d 411, ¶¶ 15–37, § 632.32(5)(i)1. does not bar State Farm from including in its policies a reducing clause that reduces the limit of UIM liability by payments the injured insured receives from non-UIM tortfeasors.

B. Policy Language

¶ 21. We now turn to whether the reducing clause in the policy issued by State Farm unambiguously complies with § 632.32(5)(i)1. The interpretation of an insurance policy presents a question of law that we review de novo. *Folkman v. Quamme,* 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. Construing the provisions of an insurance policy requires an examination of the specific provisions at issue and an assessment of whether contextual ambiguity exists. *Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, ¶ 61, 255 Wis. 2d 61, 647 N.W.2d 223.

1. The reducing clause in the policy issued by State Farm

¶ 22. General principles of contract construction control the interpretation of an insurance contract. *Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916 (citing *Kremers-Urban Co.*

*v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). Discerning and giving effect to the intent of the parties is the objective. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1 (1994). Toward that end, courts give the common, ordinary meaning to the policy language (i.e., what the reasonable person in the insured's position would understand it to mean). *Folkman,* 264 Wis. 2d 617, ¶ 17. Any ambiguity that may exist is construed in favor of the insured, while exclusions in coverage are narrowly construed against the insurer. *Id.,* ¶ 16 (citing *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990)). Ambiguity arises if the language of the policy is "susceptible to more than one reasonable construction." *Id.* The resulting interpretation of the policy's language "should advance the insured's reasonable expectations of coverage." *Taylor,* 245 Wis. 2d 134, ¶ 10.

¶ 23. The reducing clause in the case states the following:

The most we will pay is the lesser of:

a. the limits of liability of this coverage reduced by any of the following that apply:

(1) the amount paid to the *insured* by or on behalf of any *person* or organization that may be legally responsible for the *bodily injury;* or

(2) the amount paid or payable under any worker's compensation or disability benefits law; or

b. the amount of damages sustained, but not recovered.

The provision indicates that payments to an insured

from any legally responsible person will reduce the limit of UIM liability when the language is given its common, ordinary meaning.

¶ 24. Similar to the use of "legally responsible" in § 632.32(5)(i)1., subsection 1 limits the scope of the reducing clause to payments received by an insured from those "legally responsible." A reasonable person in the position of the insured would read that language to mean that the limits of UIM liability would be reduced by payment an insured received by those who may have caused the accident. Nothing in the language of the reducing clause indicates that the payor's UIM status would prevent his or her payment from falling within the scope of the reducing clause.

¶ 25. Section b of the reducing clause does not affect the limits of UIM liability. Rather, it provides that State Farm will pay for only uncompensated damages. It is a windfall prevention provision, which has been deemed valid previously. *Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 682, 579 N.W.2d 264 (Ct. App. 1998).

██

¶ 26. The reducing clause unambiguously complies with § 632.32(5)(i)1. Based on the common, ordinary language, a reasonable person in the insured's position would understand the clause to have the effect of reducing the UIM liability limit by payments made to an insured by or on behalf of those legally responsible for the accident at issue, regardless of their UIM status.

2. The reducing clause in the context of the entire policy

██

¶ 27. Our inquiry does not end because of our conclusion that the language of the reducing clause is

unambiguous. *Schmitz,* 255 Wis. 2d 61, ¶ 42. As the court noted in *Folkman,* "[s]ometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement." *Folkman,* 264 Wis. 2d 617, ¶ 21. The essence of the agreement may reveal that an unambiguous provision read in isolation is ambiguous in the context of other provisions of the policy. *Schmitz,* 255 Wis. 2d 61, ¶ 61.

¶ 28. Contextual ambiguity exists when a provision is reasonably susceptible to more than one construction when read in the context of the policy's other language. *Folkman,* 264 Wis. 2d 617, ¶ 29. "To prevent contextual ambiguity, a policy should avoid inconsistent provisions, provisions that build up false expectations, and provisions that produce reasonable alternative meanings." *Id.,* ¶ 31. For inconsistencies to alter the construction of an otherwise unambiguous provision, the inconsistencies must be "material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Id.,* ¶ 32.

¶ 29. Other provisions of the policy in this case do not render the reducing clause reasonably susceptible to more than one construction. The policy begins with declarations, which is "generally the portion of an insurance policy to which the insured looks first." *Schmitz,* 255 Wis. 2d 61, ¶ 62. The declarations page of the policy lists the types of coverage included in the policy and the limits of liability for each. Included in the list was "UNDERINSURED MOTOR VEHICLE" as one of the coverages.

¶ 30. Beneath the list of coverages and limits of liability, a list of exceptions and endorsements was provided. Included in the list is a document labeled 6083BB and entitled "AMENDMENTS TO UNIN-

SURED MOTOR VEHICLE AND UNDERINSURED MOTOR VEHICLE COVERAGES." 6083BB is one of the endorsements that Loretta Bailey received. It is clearly marked as "6083BB" at the top of the first page. Additionally, "6083BB" appears in the lower right-hand corner of each page. The document itself is also entitled, in bold uppercase letters, "AMENDMENTS TO UNIN-SURED MOTOR VEHICLE AND UNDERINSURED MOTOR VEHICLE COVERAGES." To a reasonable person in the position of the insured, the endorsement would be easily located.

¶ 31. The UIM section of the policy issued by State Farm, as amended by the endorsement, provides the following:

> We will pay damages for <u>bodily injury</u> an <u>insured</u> is legally entitled to collect from the owner or driver of an <u>underinsured motor vehicle</u>. The <u>bodily injury</u> must be caused by accident arising out of the operation, main-tenance or use of an <u>underinsured motor vehicle</u>.
>
> . . . .
>
> <u>Underinsured Motor Vehicle</u> – means a land motor vehicle:
>
> 1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
>
> 2. whose limits of liability for bodily injury liabil-ity:
>
>> a. are less than the limits of liability of this coverage; or
>>
>> b. have been reduced by payments to *persons*

other than the *insured* to less than the limits of liability of this coverage.

Read in isolation, one may conclude that the language stating the payments that State Farm would make indicates that the UIM coverage relates to payments made from a UIM tortfeasor. However, the point of contextual ambiguity is not to read provisions in isolation. *Folkman,* 264 Wis. 2d 617, ¶ 21 (stating that "[t]he language of a policy should not be made ambiguous by isolating a small part from the context of the whole"). On the declarations page itself, the policy indicates that there are "EXCEPTIONS AND ENDORSEMENTS" to the various types of coverage provided. In the list of those exceptions and endorsements appears the endorsement related to UIM coverage. At the top of the endorsement, it states, "This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement." A reasonable person in the position of the insured would understand that the reducing clause, amended by the endorsement, would affect the benefits he or she may receive from the UIM coverage.

¶ 32. Considering context, State Farm's policy "clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 33, 236 Wis. 2d 113, 613 N.W.2d 557. In this case, the combination of explicitly listing the endorsement related to UIM coverage on the declarations and the reducing clause that complies with § 632.32(5)(i)1. creates the requisite clarity for the reducing clause to be deemed enforceable.

Accordingly, we hold that the reducing clause in the policy issued by State Farm unambiguously complies with § 632.32(5)(i)1.

## III

¶ 33. Based on the plain language of § 632.32(5)(i)1., UIM insurers may reduce the limit of UIM liability by amounts an insured receives from or on behalf of tortfeasors, regardless of the payors' UIM status. The reducing clause included in the policy issued by State Farm unambiguously sets forth the coverage that Bailey's mother purchased, making it enforceable. Because the payments Bailey received from American Family exceed the limit of UIM liability in the State Farm policy, State Farm need not pay any benefit to Bailey.

*By the Court.*—The decision of the court of appeals is reversed in part and affirmed in part.

¶ 34. ANN WALSH BRADLEY, J. (*dissenting*). For the same reasons which are more fully set forth in *Marotz v. Hallman,* 2007 WI 89, 302 Wis. 2d 428, 734 N.W.2d 411 (Bradley, J., dissenting), I write separately here.

¶ 35. I cannot join the majority's opinion because its interpretation that Wis. Stat. § 632.32(5)(i) is "plain" and unambiguous is based on an analysis that violates a basic principle of statutory construction by rendering statutory language superfluous. Additionally, it fails to follow prior decisions interpreting the statute. *Id.,* ¶ 2.

¶ 36. The majority concludes that State Farm can reduce UIM limits by payments made from non-UIM tortfeasors. Majority op., ¶ 2. I disagree. Rather, I determine that § 632.32(5)(i) does not permit State

Farm to reduce its UIM limits by amounts paid to Bailey on behalf of Regala, a non-UIM tortfeasor. Because I conclude that § 632.32(5)(i) does not permit such a reduction, I need not reach the issue of contextual ambiguity. Accordingly, I respectfully dissent.

¶ 37. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice LOUIS B. BUTLER, JR. join this dissent.