In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2848

ROCKWELL AUTOMATION, INC.,

*Plaintiff,*

*v.*

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

*Defendant, Cross Plaintiff-Appellant,*

*v.*

TRAVELERS INDEMNITY COMPANY,
as successor in interest to Gulf Insurance
Company, and FEDERAL INSURANCE COMPANY,

*Defendants, Cross Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 904—**Lynn Adelman**, *Judge.*

ARGUED MAY 8, 2008—DECIDED SEPTEMBER 12, 2008

Before MANION, EVANS, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Following a state court trial in
Missouri, a jury found Rockwell Automation, Inc.
("Rockwell") liable for damages exceeding $97 million. The
court also awarded post-judgment interest which eventu-
ally accrued to over $18 million. Rockwell's excess
insurers, National Union Fire Insurance Company of
Pittsburgh ("National Union"), Federal Insurance Com-
pany ("Federal"), and Gulf Insurance Company ("Gulf")
refused to pay the post-judgment interest, and Rockwell
filed suit in Wisconsin state court seeking indemnifica-
tion. The insurers removed the action to federal court.
National Union settled with Rockwell, paid the post-
judgment interest, and then filed cross-claims against
the other excess insurers seeking to recoup the $18 million.
The district court granted motions to dismiss and for
summary judgment filed by Federal and Travelers Indem-
nity Company ("Travelers"), Gulf's successor in interest.
The motions were granted based on the district court's
conclusion that the general coverage sections of Federal
and Gulf did not make them responsible for payment of
post-judgment interest, and that National Union's assump-
tion of Rockwell's defense obligated it to pay the post-
judgment interest under its policy. National Union
appeals the entry of judgment against it on these bases, as
well the district court's determination that National
Union's policy should be construed under Wisconsin law
thus making it responsible for all of the post-judgment
interest that accrued on the judgment against Rockwell.
We affirm.

I.

This case arises out of a negligence and products liability lawsuit filed in 2001 in Jackson County, Missouri. Kansas City Power and Light ("KCPL") sued those it believed responsible for a natural gas explosion which occurred on February 17, 1999, and caused hundreds of millions of dollars in damage. Among the defendants was Rockwell, whose excess insurers are the parties in this appeal. The case proceeded to trial, and on March 4, 2004, the jury returned a verdict assessing KCPL's damages at $452 million, and finding Rockwell 30% at fault. After it applied credits for settlements between KCPL and other defendants, the trial court determined that Rockwell's portion of the jury verdict was $97,622,191.16. The trial court also determined, however, that based on limiting language in the contract between Rockwell and KCPL, Rockwell's liability should be reduced to $190,867. KCPL appealed, and the Missouri Court of Appeals reversed the trial court's decision to reduce the judgment. The lower court was directed not only to reinstate its original judgment, but to award post-judgment interest from August 12, 2004, the date the judgment was originally entered.

Rockwell had several layers of insurance coverage relevant to the liability it incurred in the Missouri suit. First, it was self-insured for $2 million per occurrence, and held a policy with Travelers providing $1 million in excess general liability coverage. Next, National Union issued an excess general liability policy with coverage up to $50 million over the $3 million in underlying coverage. Federal issued an additional $50 million excess policy

to Rockwell, and a third $50 million excess policy was issued by Gulf.[1] The questions before us on appeal relate to coverage under the three $50 million excess policies.[2]

The National Union policy begins with a general coverage section entitled "Coverage." In that section, National Union states that it

> will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world.

A section entitled "Defense" follows and states, in pertinent part, that whenever National Union assumes the defense of any claim or suit, it will pay

> . . .

> d. pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will

---

[1] Travelers and Gulf merged after this policy was issued, and Travelers became Gulf's successor in interest. Accordingly, while the policy it issued is discussed below, Gulf is no longer a party to these proceedings.

[2] We will use the term "excess insurers" to refer collectively to the issuers of the $50 million excess policies, namely National Union, Federal, and Travelers as Gulf's successor in interest.

not pay any pre-judgment interest based on that period of time after the offer;

e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limits of Insurance.

The Federal policy lists the National Union policy as underlying insurance, and states in its coverage section that Federal "will pay that part of loss, covered by this insurance, in excess of the limits of Underlying Insurance." The Federal policy does not expressly mention payment of post-judgment interest. The Gulf policy also lists the National Union policy as underlying insurance, and its coverage section provides that Gulf will "indemnify the Insured that amount of loss which exceeds the amount of loss payable by the underlying policies described in the Declarations . . . ." Like the Federal policy, the Gulf policy makes no express mention of payment of post-judgment interest.

While not expressly mentioning post-judgment interest, both policies contain language indicating that they follow form with the National Union policy. The Federal policy provides that "[t]he terms and conditions of Underlying Insurance are made a part of this policy, except with respect to any contrary provision contained in this policy." The Gulf policy likewise provides that, subject to certain exceptions irrelevant here, "this policy shall apply in like manner as the underlying insurance." Therefore, the terms of the National Union "Defense" section, and specifically those covering payment of post-

judgment interest, are subject to our review in determining the obligation of Federal and Travelers to pay post-judgment interest. *See Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589 (7th Cir. 2001) (noting that it is the essence of a follow-form policy to follow the underlying policy in every respect except where specifically mentioned); *see also Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 203 (3rd Cir. 2004) (noting that under a follow-form policy "coverage issues presented turn solely on the interpretation of the underlying polic[y]").

Because Rockwell was self-insured for the initial $2 million of its coverage, it retained and paid for its own trial counsel, Steven P. Sanders. The record shows that National Union, Federal, and Travelers were, at the very least, being kept abreast of developments in the case by Sanders. National Union also retained and paid for attorney Melinda Kollross with the intention that she would, at a minimum, assist at trial by identifying and preserving appellate issues. To that end, Kollross worked on a proposed verdict form and the post-trial motions, and prepared a memorandum identifying appellate issues which she forwarded to Sanders. Towards the end of the trial, KCPL asserted the existence of a conflict with Kollross's firm, and it was decided that counsel other than Kollross would be sought to assist on post-trial motions and the appeal. Attorney Susan Ford Robertson was retained by National Union for that purpose. National Union admits that it paid Robertson's fees, but the parties dispute whether National Union alone selected Robertson, and whether primary responsibility for Rockwell's defense ever transferred from Sanders to Robertson.

Following the decision of the Missouri Court of Appeals, National Union and Federal contributed the amounts within their respective policy limits to satisfy the damages portion of the judgment. However, the three excess insurers refused to pay the post-judgment interest ordered by the appellate court prompting Rockwell to initiate this action in the Milwaukee County Circuit Court seeking indemnification. Rockwell alleged that National Union was responsible for the post-judgment interest because it had assumed Rockwell's defense after the jury verdict. It also alleged in the alternative that each of the excess insurers was responsible for payment of the post-judgment interest under the general coverage sections of their policies. The excess insurers removed the action to federal court citing 28 U.S.C. § 1332 as the basis for federal jurisdiction. National Union and Rockwell entered into a settlement where Rockwell assigned to National Union its claims against Federal and Travelers. In return, National Union payed the post-judgment interest at issue, which by that point had accrued to an amount exceeding $18 million.

National Union filed amended cross-claims against Federal and Travelers denying that it had assumed Rockwell's defense and alleging that it, Federal, and Travelers had each merely participated in defending Rockwell. National Union sought from Federal and Travelers damages to compensate it for paying the $18 million in post-judgment interest. Federal and Travelers both moved to dismiss National Union's cross-claims arguing that the general coverage sections of their policies did not obligate them to pay Rockwell's post-

judgment interest. Federal moved alternatively for summary judgment arguing that National Union assumed Rockwell's defense, and that it was therefore solely responsible for payment of post-judgment interest.

The district court granted Federal and Travelers' motions to dismiss concluding that their policies did not require them to pay post-judgment interest on the judgment against Rockwell. Specifically, the court found that the language in National Union's policy, with which Federal and Gulf's policies follow form, requiring it to pay post-judgment interest when it assumed Rockwell's defense would be rendered superfluous if post-judgment interest were included in the terms "sums" and "loss" used in the general coverage section of the excess policies. The court therefore concluded that the excess insurers were only required to pay post-judgment interest when they assumed the defense, and that since National Union did not allege that Federal and Travelers had done so, it had not stated a claim upon which relief could be granted. The district court also concluded, as an alternative basis for its finding, that Federal and Travelers were entitled to summary judgment because even if post-judgment interest was covered by the "sums" and "loss" language, National Union assumed Rockwell's defense and therefore became solely liable for the post-judgment interest. Finally, the district court determined that Wisconsin law applied when construing the policies, and that National Union was therefore responsible for all of the post-judgment interest on the judgment against Rockwell, and not just the portion falling with National Union's coverage limits.

On appeal, National Union argues that there was at least a question of fact about whether it assumed Rockwell's defense during the Missouri trial, and that the district court therefore erred in entering summary judgment for Federal and Travelers. National Union also asserts that the district court erred in determining that its policy should be construed under Wisconsin law. It argues that facts exist in the record raising the possibility that its policy should be construed under California law, which is more favorable to National Union, and that the parties should have been allowed to develop the factual record more fully before the determination was made. Finally, National Union argues that the district court incorrectly interpreted the policies when it concluded that post-judgment interest was not included in the "sums" and "loss" for which the excess insurers covered Rockwell.

## II.

When the district court grants motions to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment, our review is de novo and we draw all reasonable inferences in favor of the non-movant. *Williams v. Seniff*, 342 F.3d 774, 781 (7th Cir. 2003). We turn first to the question of whether National Union assumed Rockwell's defense during the Missouri state proceedings. This question was considered below on a motion for summary judgment, and we may therefore consider the evidence filed by the parties. Fed. R. Civ. P. 56(c). We have previously noted that selection, supervision, and payment of counsel by an insurer are signs that the

insurer has assumed an insured's defense. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004). National Union argues that our statement was dicta, and does not provide a controlling test for when an insurer has assumed the defense of its insured. It is true that our concern in *Taco Bell* was an insurer's complaint that its insured had incurred unreasonable expenses in defending itself for which the insurer did not want to be held responsible. However, our discussion took for granted that selection, supervision, and payment of counsel are accepted indications that an insurer has assumed an insured's defense. *See id.* (noting that if the insurer did not trust the insured, "it could . . . have assumed the defense and selected and supervised and paid for the lawyers defending" the insured); *see also Pendleton v. Pan Am. Fire & Cas. Co.*, 317 F.2d 96, 100 (10th Cir. 1963) (noting that while an insurer did not have a duty to defend the insured, it assumed the defense by retaining two lawyers and controlling the litigation); *but see Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445-46 (5th Cir. 1991) (concluding that mere presence at and participation in settlement discussions did not constitute an assumption of the defense).

National Union argues that even if these factors are accepted as showing that an insurer assumed the defense, there exist genuine issues of material fact in determining whether it alone selected Robertson, and whether Robertson was in control of the Missouri state litigation on appeal. In support, National Union points to emails exchanged before Robertson's selection in which National Union's claims handler, Doug Brosky, solicited

and received input from Rockwell and its insurers on identifying appellate counsel. However, although input was being sought from Rockwell and its insurers, National Union was taking the lead, at least implying that the decision regarding selection of appellate counsel was National Union's to make.

We need not rely solely on any inference arising from the fact that National Union was seeking input from the other concerned parties. In an email sent to Rockwell's general counsel on May 17, 2004, Brosky stated that his inclination was "to retain [Robertson] regardless of what [Federal] says." Brosky continued that he "would like to have [Federal's] support, but their position should not and will not affect the selection process." Additionally, a representative from Federal sent Brosky an email the following day asking if he had "decided on an appellate counsel," to which Brosky responded that he was working on it and hoped to have the matter decided by the end of the month. While National Union argues that its solicitation of input creates a question of material fact to determine who selected Robertson, it should be re-membered that "we are not required to draw every con-ceivable inference from the record, and mere speculation or conjecture will not defeat a summary judgment mo-tion." *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (quotations omitted). The fact that National Union was the one seeking input, when combined with Bosky's later statements that he was going to make the decision regard-less of what input he received from Federal, shows that National Union was in charge of selecting appellate counsel.

National Union admits that it paid Robertson's fees, but it says it only did so after suggesting that all of the excess insurers pay part, and they declined to do so. Its purpose in making this argument is to point out that it paid Robertson voluntarily, and not because of any contractual obligation to do so. National Union's motivation for retaining and paying for Robertson is clear—it was going to be the first excess insurer impacted if the Missouri trial court's decision was overturned on appeal. While clear, however, the motivation is not the deciding factor here. National Union's policy binds it to pay post-judgment interest not included in any underlying policy or other insurance when it assumes the defense of any claim or suit against its insured. There is no concern expressed in the policy for what may have caused National Union to assume the defense, or attention given to the effect of any particular motivation. Therefore, National Union is not relieved of its obligation to pay post-judgment interest if it assumed Rockwell's defense voluntarily rather than because it was contractually obligated to do so.

National Union's final argument on this point is that Robertson was not in control of the case on appeal, and therefore National Union cannot be said to have assumed Rockwell's defense. If true, this would be important because mere participation in Rockwell's defense would not obligate National Union to pay post-judgment interest under the "Defense" section of its policy. In support of its argument, National Union again highlights an email in which Brosky responds to Robertson's submission of post-trial motion drafts saying he would defer to Sanders on their final approval. National Union also

relies on communications indicating that Robertson was receiving advice from Sanders and others on appellate strategy, and that Robertson kept Rockwell, Sanders, and the excess insurers apprised of the status of the appeal. The conclusion National Union draws from this evidence is that it "did not assume exclusive control over Rockwell's defense at the post-trial stage." However, the fact that various parties were participating in Rockwell's defense during the appeal says nothing of who was in charge of the defense. National Union concedes that it participated in Rockwell's defense at trial, yet it argues, and the record confirms, that Rockwell was in charge of its own defense at that stage. Likewise, the fact that multiple parties were participating in Rockwell's defense on appeal does not undercut the fact that one party was in charge.

Even the evidence cited by National Union establishes that Robertson was in charge of Rockwell's defense on appeal. Robertson was the one seeking input and keeping others apprised. Additionally, to the communications cited by National Union can be added numerous emails in which parties expressed deference to Robertson's judgment and indicated that they were only making "suggestions." In fact, Sanders expressly told Robertson when discussing the issue of whether to file a reply brief, "you are the appellate expert so I defer to you." Not only was Robertson the hub of communication to whom others deferred, but the record reveals no other attorney who could have been considered in charge if Robertson was not.

In sum, selection and payment by an insurer of the attorney who controls an insured's defense indicates that

the insurer has assumed the defense. *Taco Bell*, 388 F.3d at 1076. The record establishes that National Union selected and paid for Robertson to represent Rockwell on appeal, and that Robertson was in charge of Rockwell's defense by the time the case reached the appellate level. There is no evidence in the record sufficient to raise an inference otherwise. We conclude, therefore, that National Union assumed Rockwell's defense during the proceedings in the Missouri state court.

Our determination that National Union assumed Rockwell's defense makes necessary a review of the district court's determination that National Union's policy should be construed under Wisconsin law. National Union argued below that Rockwell exhibited California ties that warranted allowing the parties to develop the factual record before a choice of law determination was made. The district court, however, found that the National Union policy's most significant ties were with Pennsylvania, and then applied Wisconsin law noting that there was no outcome-determinative difference between the relevant law in the two states. National Union argues that the choice of law question is relevant because if its policy is construed under California law, then its responsibility for paying "all interest that accrues after entry of judgment" when it assumes the defense means it is responsible only for "all interest on that part of the judgment for which the company was liable, and not all interest on the entire judgment." *Standard Accident Ins. Co. of Detroit v. Winget*, 197 F.2d 97, 106 (9th Cir. 1952) (quoting *Sampson v.*

*Century Indem. Co.*, 66 P.2d 434, 436 (Cal. 1937)).[3] If, on the other hand, Wisconsin law governs, then "all interest" means "all interest on the judgment, whatever its amount in relation to the policy limits." *Weimer v. Country Mut. Ins. Co.*, 575 N.W.2d 466, 473 (Wis. 1998). We review a district court's choice of law determination de novo. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

In a suit, like this one, where subject matter jurisdiction is based on diversity, the forum state's choice of law rules determine the applicable substantive law. *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). "In contract cases, Wisconsin courts apply the law of the state with which the contract has the most significant relationship." *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir. 1994). Contacts considered relevant are (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the respective domiciles, places of incorporation and places of business of the parties. *Id.* It is important "not to count contacts but instead, to consider which contacts are most significant and to determine where those contacts are found." *Id.*

Taking the last factor first, we note that National Union is a Pennsylvania company and the Declarations page of

---

[3] National Union also attempts to argue on appeal that New York law governs its contract. However, it never asserted this argument to the district court, nor did it raise any New York contacts below. Accordingly, the argument is waived. *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 652 (7th Cir. 2007).

the policy it issued to Rockwell lists its home office at a Pennsylvania address. Rockwell was issued the policy under its prior name, Rockwell International Corporation. The Declarations page provides a Pennsylvania address for Rockwell International Corporation, but a revised Declarations page list an address in California. Rockwell, however, is incorporated in the state of Delaware with its principal place of business in Wisconsin. Regarding the place of performance and the location of the policy's subject matter, we note that National Union agreed to insure Rockwell for an occurrence "happening anywhere in the world." This does not help our analysis much, but it is helpful to note that the specific subject matter at issue here was an explosion resulting in property damage to KCPL in Missouri. The resulting law suit was filed in Missouri, and it was a Missouri court that issued the judgment under which Rockwell became liable, thus triggering its coverage under the National Union policy.

These facts are sufficient to indicate that the policy's most significant contacts are with Pennsylvania or Missouri. The district court determined that the strongest connection was with Pennsylvania, but in reliance on *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991), it applied the law of Wisconsin because it was the forum state and "there is no outcome-determinative difference between the law of Pennsylvania and that of Wisconsin with respect to the issue in question." In *Wood*, however, we held that "when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Id.* Here, National Union did raise the choice of law issue, and *Wood* is therefore inapposite.

For the specific question under consideration, however, we need not resolve the choice of law issue because, like Wisconsin, courts in Pennsylvania and Missouri construe the "all interest" language as rendering an insurer responsible for the entirety of the interest on a judgment, not just that portion of the judgment falling within the insurer's coverage. *See Levin v. State Farm Mut. Automobile Ins. Co.*, 510 S.W.2d 455, 458 (Mo. 1974) (noting that an "agreement to pay court costs and interest is not part of, but is a separate obligation beyond the limit of the [insurer's] liability"); *Underwood v. Buzby*, 136 F. Supp. 957, 959 (E.D. Pa. 1955) (concluding that the requirement under Pennsylvania law that vague provisions be resolved in favor of the insured required that the "all interest" language render an insurer liable for all of the interest on a judgment regardless of policy limits).

Additionally, even under California law, courts have a "duty to construe the policy in its entirety, and taking the instrument by its four corners . . . to ascertain the mutual intention of the parties as it existed at the time of the execution of the instrument." *Sampson v. Century Indem. Co.*, 66 P.2d 434, 436 (Cal. 1937). As the court noted in *Underwood* when considering the "all interest" language, "very little restrictive language would have been required to limit the liability of the insurer to interest only upon that portion of the judgment covered by its policy if that were the intention of the insurer." *Underwood*, 136 F. Supp. at 959. National Union's policy, in fact, contains such language, but it applies only to *pre-judgment*

*interest*.[4] The fact that National Union's policy requires it to pay pre-judgment interest only on that part of the judgment falling within its policy limit, but is missing a similar limitation on post-judgment interest would have made National Union's position tenuous even under California law. *See Maxconn, Inc. v. Truck Ins. Exch.*, 88 Cal. Rptr. 2d 750, 758 (Cal. Ct. App. 1999) ("The absence of an expression or word in a policy is clearly an appropriate consideration in the interpretation of contracts."). We conclude, therefore, that under the law of any of the states put forth, National Union's policy requires it to pay all of the post-judgment interest for which Rockwell became liable when it has assumed Rockwell's defense.

National Union attempts to circumvent the language in its policy requiring it to pay "all interest" after assuming Rockwell's defense by arguing that post-judgment interest is included in the general coverage sections of the three excess policies. As noted above, the "Coverage" section in National Union's policy makes it responsible for paying "those sums . . . that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . ." Federal's policy obligates it to pay "that part of loss . . . in excess of the limits of Underlying Insurance," and Gulf's requires it to "indemnify the Insured that amount of loss which exceeds the amount of loss payable by the underlying policies." The district court determined that the words "sums" and "loss" in the coverage sections do not

---

[4] "When we assume the defense of any claim or suit . . . [w]e will pay . . . pre-judgment interest awarded against the Insured on that part of the judgment we pay."

include post-judgment interest, and we review that construction de novo. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 819 (7th Cir. 2008). When construing an insurance policy, the objective should be to discern and give effect to the parties' intentions. *State Farm Mut. Auto. Ins. Co. v. Bailey*, 734 N.W.2d 386, 391 (Wis. 2007). This occurs primarily by giving "the common, ordinary meaning to the policy language (i.e., what the reasonable person in the insured's position would understand it to mean)." *Id.* While ambiguities are construed in favor of the insured, ambiguities only exist when "the language of the policy is susceptible to more than one reasonable construction." *Id.* (quotation omitted).[5]

National Union's argument that post-judgment interest is included in the general coverage sections of the three excess policies hinges on the general definitions of the terms "sums" and "loss." Additionally, National Union argues that the coverage sections of the policies set forth what the excess insurers are required to pay within the their policy limits, while the "Defense" section of National Union's policy spells out what they must pay in addition to their policy limits. Neither of these arguments is supported by a reasonable reading of National Union's policy. First, as noted by the district court, the

---

[5] Our conclusion above that we need not resolve the choice of law issue is not changed by citation to these general construction principles because they are in effect in both Missouri and Pennsylvania. *See Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007); *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997).

terms "sums" and "loss" can arguably be read in isolation to include post-judgment interest. However, when considered in the context of the policy as a whole, it is unreasonable to read those terms as including post-judgment interest because there is a section specifically articulating when the insurer will pay post-judgment interest, i.e., when it assumes Rockwell's defense. *See 1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W.2d 822, 838 (Wis. 2006) (noting that "a contract is to be construed so as to give a reasonable meaning to each provision of the contract, and that courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage"); *accord TAP Pharm. Prods. Inc. v. State Bd. of Pharm.*, 238 S.W.3d 140, 143 (Mo. 2007); *Guy M. Cooper, Inc. v. East Penn Sch. Dist.*, 903 A.2d 608, 616 (Pa. Super. Ct. 2006). The provision stating that National Union will pay post-judgment interest when it assumes the defense would be rendered superfluous if in the preceding section it promised to pay post-judgment interest as part of a "sum" for which Rockwell became liable, whether it assumed Rockwell's defense or not. Inclusion of post-judgment interest in the term "loss" as used in the follow-form policies of Federal and Gulf would likewise render superfluous the National Union "Defense" section.

National Union attempts to overcome this conclusion by arguing that the "Coverage" section sets forth National Union's obligations within its policy limits, and that the "Defense" section provides for its obligations in addition to the policy limits. It is true that the "Defense" section sets forth amounts National Union will pay above its policy limit. Indeed, the final line of the section

states, "All expenses we incur in the defense of any suit or claim are in addition to our Limits of Insurance." However, it is unreasonable to read a section entitled "Defense" as if its *purpose* is to set forth the amounts National Union will pay outside of its policy limits. A more reasonable reading of the section is that its purpose is to describe when National Union can and must defend Rockwell, and then what amounts will be paid when National Union assumes the defense *that are not already provided for* in the "Coverage" section. If post-judgment interest were already included in the coverage section, there would be no need to list it separately as an amount to be covered in the event National Union assumed Rockwell's defense. Furthermore, if the purpose of the "Defense" section was to articulate the amounts that would be paid outside of the policy limits, it would have been very simple to state as much. As the policy is written, however, it contains no such language.[6] Accordingly, the district court did not err in concluding that post-

---

[6] Contrary to National Union's argument, the final line of the "Defense" section referenced above does not show that the section's purpose is to set forth the amounts National Union will pay in addition to the policy limit. There are payments discussed in the "Defense" section that are not expenses that would be incurred by National Union in Rockwell's defense—post-judgment interest is an example of one. The language plainly means that the expenses National Union incurs while defending Rockwell (such as Robertson's fees) will not reduce the amount for which National Union has agreed to cover Rockwell. It is unreasonable to attempt to read this line as a sort of policy statement giving meaning to the entire section.

judgment interest is not included in the general coverage sections of the National Union, Federal, and Gulf policies.

III.

The record establishes that National Union selected and paid for the attorney who controlled Rockwell's defense on appeal, which in turn establishes that National Union assumed Rockwell's defense during the Missouri state proceedings. Additionally, the law of the states shown in the record to have the most significant contacts with National Union's policy require an insurer who agrees to pay "all interest" accruing after entry of judgment to pay the interest accrued on the entire judgment. The district court therefore did not err in determining that National Union is responsible for the full amount of post-judgment interest that accrued on the judgment against Rockwell. Finally, the district court did not err in its determination that post-judgment interest was not included in the general coverage sections of the policies issued by National Union, Federal, and Gulf. Accordingly, we AFFIRM the district court's dismissal of National Union's claims and entry of judgment for Federal and Travelers.