COURT OF APPEALS
DECISION
DATED AND FILED

January 6, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2308**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV643**

IN COURT OF APPEALS
DISTRICT III

---

ADELE R. PETERS (A MINOR), BY HER GUARDIAN AD LITEM,
JOHN D. CLAYPOOL, CONNIE PETERS AND ALEX R. PETERS, IV,

   PLAINTIFFS-APPELLANTS,

   V.

PROGRESSIVE UNIVERSAL INSURANCE COMPANY, JADYN M. PETERS,
JENNIFER L. PETERS, PARTNERS MUTUAL INSURANCE COMPANY AND
MENOMINEE INDIAN TRIBE OF WISCONSIN HEALTH CARE PLAN,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1    HRUZ, J. Adele Peters appeals an order granting declaratory judgment to Partners Mutual Insurance Company and dismissing Partners Mutual from this lawsuit. Adele was injured while riding as a passenger in a vehicle

driven by Jadyn Peters and owned by Jennifer Peters.[1]  After receiving payments from Jadyn and Jennifer's liability insurer, Adele sought underinsured motorist ("UIM") coverage from her insurer, Partners Mutual, arguing that she was entitled to a separate $100,000 in UIM limits for Jadyn's negligent driving and for Jennifer's negligent entrustment of the vehicle.

¶2     The circuit court concluded that Adele was entitled to a single $100,000 UIM limit which, pursuant to a reducing clause in Partners Mutual's policy, was reduced to $0 as a result of the two $50,000 payments Adele received from Jadyn and Jennifer's liability insurer.  Adele argues that the circuit court erred by reaching this conclusion, and she argues that she is entitled to separate UIM limits for Jadyn's and Jennifer's separate negligent acts pursuant to both Partners Mutual's policy and WIS. STAT. § 632.32(3) (2023-24).[2]

¶3     We conclude that Partners Mutual's policy unambiguously provides Adele with a single $100,000 UIM limit.  For coverage purposes under Partners Mutual's policy, Adele's injuries resulted from a single accident, rather than the two negligent acts leading up to the accident.  We further conclude that WIS. STAT. § 632.32(3) does not require Partners Mutual to provide separate UIM limits to Adele for Jadyn's and Jennifer's separate negligent acts.  Accordingly, we affirm.

---

[1] Because Adele, Jadyn and Jennifer share a surname, we refer to them by their first names throughout the remainder of this opinion.  Jennifer is Adele's aunt and Jadyn's mother.

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

## BACKGROUND

¶4 In April 2021, Jadyn lost control of the vehicle she was driving and in which Adele was riding in the front passenger seat, and it collided head on with another vehicle, causing injuries to Adele. Jennifer was the owner of the vehicle Jadyn was driving. At the time of the collision, Jennifer insured the vehicle through a liability insurance policy issued by Progressive Universal Insurance Company, which also covered Jadyn.

¶5 In July 2022, Adele initiated this lawsuit against Jadyn, Jennifer, Progressive, and Partners Mutual. Adele alleged that Jadyn's negligent operation of the vehicle caused the accident and that both Jadyn's negligent operation and the resulting accident caused Adele's injuries. Adele also alleged that Jennifer negligently maintained and entrusted a defective vehicle by allowing Jadyn to drive the vehicle while it had a defective airbag. Adele further alleged that Jennifer's negligent maintenance and entrustment of the vehicle contributed to Adele's injuries on the day of the accident. In April 2023, Progressive paid Adele its liability limits of $50,000 for Jadyn's negligence and $50,000 for Jennifer's negligence, totaling $100,000.

¶6 Because Adele's expenses for her accident-related injuries exceeded Progressive's $100,000 payment, Adele also sought UIM coverage under the automobile insurance policy that her parents purchased from Partners Mutual ("the Policy"). The Policy's declarations page provides the limits of liability for each type of coverage and states that "[t]he limit of liability for each coverage shall not be more than the amount stated for such coverage, subject to all the **PROVISIONS** of this policy." As to UIM coverage, the declarations page states that the limit was "$100,000/Each Person" and "$300,000/Each Occurrence."

¶7 The Policy also contains specific provisions for UIM coverage in the section titled "Part III—Uninsured Motorists and Underinsured Motorists." (Formatting altered.) Within that section, the initial grant of UIM coverage states:

> **We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured person**, caused by an accident, and result from the ownership, maintenance or use of the **underinsured motor vehicle**.
>
>  ….
>
> **We** will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability policies or bonds have been exhausted by payment of judgements or settlements.

Partners Mutual does not dispute that, under the Policy, Adele is an insured person;[3] that she could recover compensatory damages for bodily injuries caused by an accident with an underinsured motor vehicle; and that Progressive's limits of liability have been, or will be, exhausted by settlements.

¶8 Rather, Partners Mutual disputes the amount of UIM coverage that is available to Adele pursuant to the UIM coverage section's limits of liability provision and its reducing clause. The limits of liability provision states:

> The limits of liability shown in the Declarations apply, subject to the following:
>
> 1. The limit for "each person" is the maximum for all persons for **bodily injury** sustained by one person in any one accident.

---

[3] The definition of "insured person" in the UIM coverage section includes "[y]ou or a relative" and "[a]ny other person occupying your insured car." (Formatting altered.) Adele is a "relative" pursuant to this definition and therefore is an "insured person" under the Policy.

2. Subject to the limit for "each person", the limit for "each accident" is the maximum payable for all damages because of **bodily injury** sustained by two or more persons in any one accident.

….

**We** will pay no more than these maximums regardless of the number of vehicles described in the Declarations, **insured persons**, claims, claimants, policies, or vehicles involved in the accident.

The provision's reducing clause further states that the limits of liability would be reduced by:

1. A payment made by the owner or operator of the … **underinsured motor vehicle** or organization which may be legally liable.

2. A payment under Part I liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation law, disability benefits law or similar law.

¶9 Adele had argued to Partners Mutual that she was entitled to $200,000 in UIM limits pursuant to the Policy—$100,000 for her claim against Jadyn and $100,000 for her claim against Jennifer. Following Progressive's issuing of its liability limits for each of her claims, Adele argued that she was then entitled to $100,000 in UIM limits under the Policy. Partners Mutual disagreed and sought a declaratory judgment stating that, pursuant to the Policy, "there is a single $100,000.00 UIM coverage limit available to [Adele] in relation to the" April 2021 accident. Partners Mutual also sought a declaration that Adele's "UIM coverage limit has been reduced to $0 by virtue of the Policy's reducing clause and the settlement payments [Adele] received from Jadyn and Jennifer Peters' liability insurer." Partners Mutual further sought an order dismissing Adele's UIM claim against it.

¶10     In response, Adele argued that Partners Mutual continued to owe her $100,000 because WIS. STAT. § 632.32(3), often referred to as the "omnibus statute," *see Thom v. 1st Auto & Cas. Ins.*, 2021 WI App 33, ¶8, 398 Wis. 2d 273, 961 N.W.2d 79, required Partners Mutual to offer separate UIM limits for separate acts of negligence, and because there were two occurrences under the Policy.

¶11     The circuit court granted Partners Mutual's declaratory judgment motion in an oral ruling, concluding that WIS. STAT. § 632.32(3) applied to the Policy's UIM coverage but that "[t]here was only one injury-causing event and one 'occurrence'" based on the Policy's language.  In reaching this conclusion, the court placed "significant weight" on *Severude v. American Family Mutual Insurance*, 2002 WI App 33, 250 Wis. 2d 655, 639 N.W.2d 772 (2001), to conclude that "occurrence" in the Policy "refers to the injury-causing event and not to 'each negligent act that may lead to a car accident.'"  Because Adele was not injured until Jadyn lost control of the vehicle, the court determined that there was one accident that caused Adele's injuries and that "Jennifer's negligent entrustment cannot be a separate occurrence triggering a separate payment of policy limits."  The court therefore concluded that, upon application of the reducing clause, "the amount paid by Progressive reduced the UIM benefits payable to Adele under the" Policy to zero.

¶12     The circuit court subsequently entered a written order granting Partners Mutual's declaratory judgment motion and dismissing it as a party to the lawsuit.  Adele now appeals.

**DISCUSSION**

¶13     On appeal, Adele again argues that she remains entitled to $100,000 in UIM limits, $50,000 for Jadyn's negligence and $50,000 for Jennifer's

negligence. First, Adele argues that the Policy's language entitles her to separate UIM limits because there were two separate "occurrences." Second, Adele contends that WIS. STAT. § 632.32(3) requires Partners Mutual to offer separate UIM limits for each negligent act. For the following reasons, we conclude that neither the Policy's language nor § 632.32(3) require Partners Mutual to offer separate UIM limits to Adele.

¶14 The circuit court's decision granting declaratory judgment to Partners Mutual is a discretionary decision, which we normally review for an erroneous exercise of discretion. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶36, 244 Wis. 2d 333, 627 N.W.2d 866. "When the exercise of discretion turns on a question of law, however, our review is de novo." *Talley v. Mustafa*, 2018 WI 47, ¶13, 381 Wis. 2d 393, 911 N.W.2d 55. Here, the circuit court's declaratory judgment decision involved interpreting the Policy and applying WIS. STAT. § 632.32(3), both of which are questions of law that we review de novo. *See Talley*, 381 Wis. 2d 393, ¶13; *Marotz v. Hallman*, 2007 WI 89, ¶15, 302 Wis. 2d 428, 734 N.W.2d 411. Thus, we review the circuit court's declaratory judgment decision de novo. *See Talley*, 381 Wis. 2d 393, ¶13.

## I. The Policy's language provides a single $100,000 UIM limit.

¶15 Adele argues that the Policy does not define the terms "accident" or "occurrence" and that we must apply those terms' commonly understood definitions. She contends that, according to the common definition of "occurrence," "Jennifer's *act* of allowing Jadyn and Adele to ride in the vehicle is an 'occurrence,'" "something which 'occurred,'" and "an event" or "an incident." Accordingly, Adele concludes that Jennifer's entrustment of the vehicle to Jadyn was a wholly separate act from Jadyn's operation of the vehicle, such that both

acts should be considered separate occurrences providing two UIM limits under the Policy. For these reasons, Adele asserts that the circuit court incorrectly concluded that "occurrence" referred to an injury-causing event rather than a negligent act.

¶16 We apply the general rules of contract construction when interpreting insurance policies. *See Marotz*, 302 Wis. 2d 428, ¶34. When interpreting a policy, we seek to determine and give effect to the contracting parties' intent. ***American Fam. Mut. Ins. v. American Girl, Inc.***, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe policies "as they would be understood by a reasonable person in the position of the insured," ***id.***, and by giving policy language its common, ordinary meaning, ***Marotz***, 302 Wis. 2d 428, ¶34. If a policy's terms "are clear and unambiguous on their face, the policy must not be rewritten by construction." ***Severude***, 250 Wis. 2d 655, ¶13. If a policy's terms are ambiguous—meaning they are reasonably susceptible to more than one construction—then those ambiguities are construed in favor of the insured. ***Marotz***, 302 Wis. 2d 428, ¶34.

¶17 We conclude that the Policy provides a single $100,000 UIM limit for Adele's injuries, regardless of the number of negligent acts leading to the accident that caused those injuries. The Policy's language unambiguously states that $100,000 is the most Partners Mutual will pay for Adele's injuries resulting from a single accident. This interpretation is further supported by our holding in ***Severude***, in which we rejected the same argument Adele makes in this instance.

¶18 To explain, the Policy's UIM limits are provided in the declarations page and are addressed more substantively in the Policy's specific section regarding UIM coverage. The declarations page states the limits of liability for

UIM coverage are "$100,000/Each Person" and "$300,000/Each Occurrence." Although Adele focuses on the term "occurrence," we agree with Partners Mutual that the definition of "occurrence" is irrelevant because the Policy's UIM coverage section uses the term "accident" rather than "occurrence" in its relevant provisions. Given that the limits of liability provision in that section specifically refers to the "limits of liability shown in the Declarations," the "each accident" limit in the limits of liability provision—which follows, and is "[s]ubject to the limit for 'each person'" in that provision—is the "Each Occurrence" limit on the declarations page. Otherwise, the "Each Occurrence" limit in the declarations page and the "each accident" limit in the limits of liability provision would have no effect.

¶19 Given the foregoing, our focus is necessarily on the "each person" provisions in the limits of liability, not on the number of occurrences. Stated another way, and as Partners Mutual contends, the issue in this case is the application of the "$100,000/Each Person" limit in the declarations page and the "each person" limit in the UIM coverage section, given that Adele is the sole claimant under the Policy. The "Each Person" limit is addressed in the Policy's UIM coverage section's limits of liability provision. Importantly, it states that the "Each Person" limit shown in the declarations page "is the maximum for all persons for bodily injury sustained by one person in any one accident." (Formatting altered.) The Policy further provides that Partners Mutual will not pay more than the provided maximums "regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident." (Formatting altered.)

¶20 Reading the "$100,000/Each Person" limit in the declarations page together with the UIM coverage section's limits of liability provision, a reasonable

9

insured would understand the "Each Person" limit to mean that $100,000 is the most the Policy will provide for all of an individual's injuries resulting from "any one accident," regardless of the number of claims arising out of that one accident.

¶21    Here, Adele's injuries were the result of a single accident—the collision between the vehicle driven by Jadyn and the other vehicle. It does not matter that both Jadyn's negligent operation of the vehicle and Jennifer's negligent entrustment of the vehicle to Jadyn may have led to that accident. The Policy also accounts for the possibility of multiple claims arising from a single accident, as is the case here, given the language that the $100,000 limit applies regardless of the number of vehicles, insured persons, or claims. Thus, even though Jadyn's and Jennifer's separate negligent acts allegedly led to the collision, for coverage purposes under the Policy, Adele's injuries resulted from the collision itself and not those two acts. Because Adele sustained injuries in a single accident, the Policy unambiguously states that $100,000 is the most Partners Mutual will pay in UIM coverage for those injuries.

¶22    Our interpretation is consistent with, if not compelled by, the interpretation of a substantially similar provision in *Severude*. There, we interpreted a limit of liability provision stating that the "each person" liability limit in the declarations page was "the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one occurrence." *Severude*, 250 Wis. 2d 655, ¶10. In *Severude*, the plaintiff's 12-year-old daughter died in a rollover accident after the plaintiff's 16-year-old daughter allowed her unlicensed 15-year-old friend to drive the plaintiff's vehicle. *Id.*, ¶¶2-3. The plaintiff's automobile insurer paid its $100,000 Uninsured Motorist ("UM") coverage limits to the plaintiff based on the 15-year-old friend's negligent operation of the vehicle. *Id.*, ¶¶4-5. The plaintiff then filed a wrongful death suit

against her insurer seeking $100,000 in bodily injury liability based on her 16-year-old daughter's negligent entrustment of the vehicle to her friend. *Id.*, ¶5.

¶23 The insurer's policy contained the above-quoted limits of liability provision, which further stated that "[a]ny amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the [UM] coverage of this policy." *Id.*, ¶10. Just as Adele does here, the plaintiff in *Severude* argued that there were two "occurrences" under the insurer's policy—the friend's negligent operation of the vehicle and the 16-year-old daughter's negligent entrustment of the vehicle—and that the reducing clause did not apply to her negligent entrustment claim because the $100,000 UM benefits she received were for a separate occurrence based on the friend's negligent operation of the plaintiff's vehicle. *Id.*, ¶¶7, 11.

¶24 We rejected the plaintiff's conclusion that "a reasonable construction of the term 'occurrence' as it appears in this policy refers to each negligent act that may lead to a car accident." *Id.*, ¶15. Because the insurer's policy provided "coverage for 'bodily injury to one person *in any one occurrence*,'" we concluded that the reasonable interpretation of "occurrence" was that it referred to the event of injury. *Id.*, ¶16. We explained that the event of injury itself occurred when the vehicle rolled, even though two negligent acts led to that event. *Id.* As a result, we held that there was a single occurrence with a $100,000 liability limit available, which was reduced to $0 by virtue of the policy's reducing clause. *Id.*, ¶¶16-17.

¶25 The same reasoning from *Severude* applies here: the event of injury occurred when Jennifer's vehicle, driven by Jadyn, collided with the other vehicle, regardless of whether both Jennifer's and Jadyn's negligent acts led to the

collision. Adele attempts to distinguish *Severude* by arguing that the policy language in that case was different from the Policy's language in this case. Rather than comparing the limits of liability provisions in the two policies, however, Adele compares only *Severude*'s limits of liability provision (the "any one occurrence" language) with the limits in the Policy's declarations page (the "Each Occurrence" and "Each Person" language). She then asserts that this "difference in wording could change what a reasonable insured would have understood the terms of the [P]olicy to mean" and that "[i]t is reasonable to think that a policy providing coverage for 'each' occurrence means each separate act of negligence would be covered."

¶26 Adele's foregoing arguments are illogical. The limits of liability provision in *Severude* uses the term "occurrence" instead of the term "accident" used in the Policy's UIM coverage section's limits of liability provision. But other than the difference in terms and in coverage types,[4] the provisions are exactly the same. We conceive no reason why such a difference in wording would change what a reasonable insured would understand the Policy's UIM coverage section's limits of liability provision to mean. Rather, *Severude*'s interpretation of "occurrence" to mean the event of injury equally applies to our interpretation of the term "accident" in the Policy's UIM coverage section's limits of liability provision.

---

[4] Adele does not argue that *Severude v. American Family Mutual Insurance*, 2002 WI App 33, 250 Wis. 2d 655, 639 N.W.2d 772 (2001), is distinguishable because it involved the interpretation of UM and liability coverage limits rather than UIM coverage limits. We agree with Partners Mutual that despite this difference, the analysis remains the same.

¶27 Adele then turns to the Policy's initial grant of UIM coverage provision to argue that because both Jadyn's and Jennifer's negligent acts separately trigger coverage under that provision, each act must invoke separate UIM limits. As noted above, Partners Mutual does not dispute that, pursuant to the initial grant of UIM coverage provision, Adele is an insured person that can recover compensatory damages for bodily injuries caused by an accident with an underinsured motor vehicle. Adele focuses on the part of the UIM provision stating that the bodily injury must be "caused by an accident" and "result from the ownership, maintenance or use of the underinsured motor vehicle." (Formatting altered.) Adele further contends that Jadyn's and Jennifer's negligent acts separately trigger coverage under the initial grant of UIM coverage provision because her injuries resulted from both "the ownership and maintenance of the underinsured vehicle by Jennifer" and "the use of the underinsured vehicle by Jadyn."

¶28 We agree with Adele's understanding that both acts triggered UIM coverage, but that conclusion does nothing to alter our foregoing analysis regarding the effect of the Policy's language as a whole. Adele engages with only a portion of the UIM coverage section rather than with the entire section. There is no dispute that she is entitled to UIM coverage under the section's initial grant of coverage, but that coverage is still subject to the other provisions in that section—including the limits of liability provision, which Adele ignores. Policy provisions must be interpreted with reference to the policy as a whole and not in isolation, as Adele does here. *See Folkman v. Quamme*, 2003 WI 116, ¶24, 264 Wis. 2d 617, 665 N.W.2d 857. In short, Adele's argument in this regard conflates limits of liability with an initial grant of coverage.

¶29 Adele next turns to the underlying "theory" of UIM coverage to argue that she purchased "a predetermined level of coverage from an underinsured motorist," but that, in this case, there were two underinsured motorists. Because there were two underinsured motorists, Adele contends that a "reasonable insured would assume that the predetermined level of coverage would apply to each underinsured motorist that contributed to the injuries sustained in an accident." We disagree with Adele's contention.

¶30 It is true that UIM coverage "is intended to protect motorists against inadequately insured tortfeasors," *Pitts v. Revocable Tr. of Knueppel*, 2005 WI 95, ¶28, 282 Wis. 2d 550, 698 N.W.2d 761, by putting the insured "in the same position as he [or she] would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured," *Badger Mut. Ins. v. Schmitz*, 2002 WI 98, ¶18, 255 Wis. 2d 61, 647 N.W.2d 223 (alteration in original; citation omitted). Pursuant to this theory of UIM coverage, our supreme court has stated that UIM coverage operates "as a predetermined, fixed level of insurance coverage including payment from both the at-fault driver's liability insurance and the insured's own UIM coverage." *Schmitz*, 255 Wis. 2d 61, ¶18. Stated another way, by acquiring UIM coverage, an insured purchases "a predetermined, fixed level of UIM recovery that is arrived at by combining payments from all sources." *Marotz*, 302 Wis. 2d 428, ¶23 (citation omitted).

¶31 Here, that predetermined, fixed level of UIM recovery was $100,000, which Adele has received by combining payments from all sources— i.e., the two $50,000 liability limits she received from Progressive, the liability insurance for both of the tortfeasors. Consequently, Adele *was* provided with the predetermined level of coverage she purchased. Given our reading of the Policy, no reasonable insured would understand that the predetermined level of coverage

applies to each underinsured motorist contributing to Adele's injuries. Rather, because $100,000 is the most the Policy will provide for all injuries resulting from a single accident, a reasonable insured would understand that the predetermined level of coverage is meant to cover those injuries, regardless of the number of underinsured motorists.

¶32 In sum, Adele's injuries resulted from a single accident, which, pursuant to the Policy, entitles her to a single $100,000 UIM limit. We deem this interpretation plain and clear.

## II. WISCONSIN STAT. § 632.32(3) does not require Partners Mutual to provide separate UIM coverage limits for each separate act of negligence.

¶33 Adele next argues that, pursuant to WIS. STAT. § 632.32(3), she is entitled to separate $100,000 UIM limits for Jadyn's and Jennifer's negligent acts. Citing *Miller v. Amundson*, 117 Wis. 2d 425, 345 N.W.2d 494 (Ct. App. 1984), and *Iaquinta v. Allstate Insurance*, 180 Wis. 2d 661, 510 N.W.2d 715 (Ct. App. 1993), Adele contends that § 632.32(3) requires Partners Mutual "to extend separate $100,000 limits of liability to Jadyn and Jennifer Peters, notwithstanding the contrary policy language." Addressing Adele's argument requires us to interpret and apply § 632.32(3).

¶34 Our review of WIS. STAT. § 632.32(3) begins with its language. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related

statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46. "If the meaning of the statute is plain, we ordinarily stop the inquiry." ***Id.***, ¶45.

¶35 Except as otherwise provided, WIS. STAT. § 632.32 applies to every insurance policy "issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person." Sec. 632.32(1). With exceptions not relevant here, § 632.32(3) requires every insurance policy subject to § 632.32 to include provisions stating that: (1) "Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy"; and (2) "Coverage extends to any person legally responsible for the use of the motor vehicle." Sec. 632.32(3)(a)-(b).

¶36 This court has stated that the purpose of WIS. STAT. § 632.32(3) "is to make sure that insurance coverage obtained for 'a vehicle listed in the policy' also provides coverage 'for individuals' who 'use it with permission and are responsible for using it.'" ***Thom***, 398 Wis. 2d 273, ¶18 (citation omitted). We have interpreted § 632.32(3) "broadly so as to increase rather than to limit coverage." ***Thom***, 398 Wis. 2d 273, ¶41 (citation omitted). However, "we are not permitted to stretch the statute's application beyond its language, its purpose, and the case law interpreting it." ***Id.***

¶37 Coverage under WIS. STAT. § 632.32(3) "is imputed to every motor vehicle insurance policy," and its "requirements supersede contrary policy terms." ***Thom***, 398 Wis. 2d 273, ¶17. Thus, Wisconsin courts have interpreted § 632.32(3) to require an insurer "to extend separate limits of liability to each insured involved in an accident despite policy language to the contrary."

16

*Thom*, 398 Wis. 2d 273, ¶20. This rule applies in circumstances "where both the named insured and the additional insured are actively negligent." *Id.*, ¶22 (citation omitted).

¶38 For example, in *Miller*, the plaintiff was injured when he fell from the back of a pickup truck driven by his grandmother and in which his mother was a passenger. *Miller*, 117 Wis. 2d at 426-27. We concluded that a previous version of WIS. STAT. § 632.32(3)(a) required the grandmother's liability insurer to provide separate $100,000 liability limits to both the grandmother and the mother as tortfeasors,[5] both of whom were found negligent, despite the insurer's single $100,000 liability limit. *Miller*, 117 Wis. 2d at 427, 430. We based our conclusion on the statute's language that entitled the mother to coverage "in the same manner and under the same provision" as applicable to the grandmother, and on the statute's policy that "omnibus coverage should not subtract from the named insured's coverage." *Id.* at 429-30 (citation omitted).

¶39 Similarly in *Iaquinta*, we concluded that the current version of WIS. STAT. § 632.32(3) required a vehicle owner's liability insurer to provide $25,000

---

[5] In *Miller v. Amundson*, 117 Wis. 2d 425, 429, 345 N.W.2d 494 (Ct. App. 1984), this court applied WIS. STAT. § 632.32(2)(b) (1977-78), which required automobile insurance policies to contain a provision stating:

> The coverage provided by this policy applies, in the same manner and under the same provision as it is applicable to the named insured, to any person while riding in or operating any automobile described in this policy when the automobile is being used for purposes and in the manner described in the policy. Such coverage also extends to any person legally responsible for the operation of the automobile.

In 1979, the legislature repealed and recreated WIS. STAT. § 632.32, which changed the numbering of § 632.32(2)(b) (1977-78) to § 632.32(3) and changed the wording of the subsection to what it is today. *See* 1979 Wis. Laws, ch. 102, § 171.

liability limits for two negligent tortfeasors, despite the insurer's contrary policy language. *Iaquinta*, 180 Wis. 2d at 663. In that case, the plaintiff was injured when her vehicle was struck by a vehicle driven by an intoxicated driver and in which the vehicle's owner was a passenger. *Id.* at 664. Relying on *Miller* and subsequent cases, we explained that "separate coverage must be provided only in cases where both the named insured and the additional insured are actively negligent." *Iaquinta*, 180 Wis. 2d at 666. Because the intoxicated driver's negligent operation of the vehicle was a separate act from the vehicle owner's negligent entrustment of the vehicle, and because both were actively negligent, we held that the vehicle owner's insurer had to provide liability limits to both for their separate acts of negligence. *Id.* at 669.

¶40 In both *Miller* and *Iaquinta*, we held that WIS. STAT. § 632.32(3) required a tortfeasor's liability insurer to provide separate liability limits to that tortfeasor and a separate tortfeasor when both were actively negligent and despite contrary policy language.

¶41 Adele seeks to extend this reasoning to her own liability insurer, not to Jadyn's and Jennifer's liability insurer, by arguing that because Jadyn and Jennifer were both negligent, Adele's own, first-party UIM coverage extends to Jennifer and "applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy." She further asserts that Jadyn is entitled to the same "coverage" as Jennifer pursuant to WIS. STAT. § 632.32(3) because Jadyn was "using" Jennifer's vehicle.

¶42 Our supreme court has determined that it is appropriate to apply some of the provisions of WIS. STAT. § 632.32 to UIM coverage, "at least when that coverage is part of a liability policy." *Progressive N. Ins. v. Hall*, 2006 WI

13, ¶21, 288 Wis. 2d 282, 709 N.W.2d 46.  Adele appears to claim that under *Hall*, § 632.32(3) requires Partners Mutual to provide separate UIM coverage limits to Adele for Jadyn's and Jennifer's separate negligent acts.  But *Hall* does not compel the outcome Adele suggests.  Rather, *Hall* merely concluded that the distinction between liability and indemnity coverage did not matter for purposes of determining whether § 632.32 applied to UM and UIM coverage.[6]  Instead, that determination turned on whether UM and UIM coverage were part of a liability insurance policy subject to § 632.32.  *See Hall*, 288 Wis. 2d 282, ¶¶13, 21-23.

¶43    In *Hall*, our supreme court determined whether WIS. STAT. § 632.32(3)(a) applied to UM coverage.  *Hall*, 288 Wis. 2d 282, ¶2.  Rather than relying on the difference between liability coverage and indemnity coverage, the court instead relied on the language of other provisions in § 632.32 requiring policies "insuring against liability" to include UM coverage.  *Hall*, 288 Wis. 2d 282, ¶¶13-14; *see also* § 632.32(1), (4).  Because "every policy insuring against liability under § 632.32 must include [UM] coverage" and because § 632.32(3)(a) "plainly applies to every policy subject to § 632.32," the court concluded that § 632.32(3)(a) applied to UM coverage, "regardless of whether such coverage is categorized as liability or indemnity insurance."  *Hall*, 288 Wis. 2d 282, ¶15.

¶44    It was in the above context that our supreme court noted it was "appropriate to apply provisions of [WIS. STAT.] § 632.32 to [UIM] coverage, at

---

[6] Our supreme court described the difference between liability and indemnity coverage in *Mau v. North Dakota Insurance Reserve Fund*, 2001 WI 134, ¶30 n.13, 248 Wis. 2d 1031, 637 N.W.2d 45.  The court described liability coverage as requiring an insurer "to shield the insured from making payment on a claim for which the insured is liable."  *Id.* (citation omitted).  In contrast, indemnity coverage, such as UM or UIM coverage, "seeks to compensate the insured after the insured has sustained an actual loss."  *Id.* (citation omitted).

least when that coverage is part of a liability policy," and despite prior case law suggesting the contrary. ***Hall***, 288 Wis. 2d 282, ¶21. The court noted that ***American Hardware Mutual Insurance v. Steberger***, 187 Wis. 2d 682, 523 N.W.2d 187 (Ct. App. 1994), and ***Peabody v. American Family Mutual Insurance***, 220 Wis. 2d 340, 582 N.W.2d 753 (Ct. App. 1998), *abrogated by*, ***Vieau v. American Family Mutual Ins.***, 2006 WI 31, 289 Wis. 2d 552, 712 N.W.2d 661, suggested that § 632.32 applied only to liability coverage, but it explained that ***Mau v. North Dakota Insurance Reserve Fund***, 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45, had called that suggestion into question. ***Hall***, 288 Wis. 2d 282, ¶¶19-21.

¶45 The court stated that ***Mau*** concluded the distinction between liability and indemnity coverage did not matter for purposes of applying WIS. STAT. § 632.32 because the excess policy in that case, which included UM and UIM coverage, was a liability policy that fell within the scope of the statute. ***Hall***, 288 Wis. 2d 282, ¶22 (citing ***Mau***, 248 Wis. 2d 1031, ¶30 n.13). The court explained that its determination in ***Mau*** was consistent with its determination that § 632.32(3)(a) applied to UM coverage, regardless of whether UM coverage was categorized as indemnity or liability coverage, because "every policy insuring against liability under § 632.32 must include [UM] coverage." ***Hall***, 288 Wis. 2d 282, ¶23. In other words, § 632.32(3)(a) applied to UM coverage because the coverage was part of a policy insuring against an insured's liability, which brought the coverage within the scope of § 632.32, and because every policy was required to include UM coverage. *See* § 632.32(1), (4).

¶46 Here, the Policy falls within the scope of WIS. STAT. § 632.32 because the Policy is a liability policy that contains UIM coverage. But simply because § 632.32 applies to the Policy does not mean that § 632.32(3)(a) requires

Partners Mutual to provide separate UIM limits to Adele. In fact, the Policy complies with that provision by defining an "insured person" as "[y]ou or a relative" and "[a]ny other person occupying your insured car." (Formatting altered.) By providing coverage to "[a]ny other person occupying your insured car," the Policy provides UIM coverage "in the same manner and under the same provisions to any person using any motor vehicle described in the policy." *See* § 632.32(3)(a). Thus, consistent with § 632.32(3)(a), any other person in Adele's vehicle would have had the same UIM coverage as Adele herself.

¶47 The problem for Adele, as Partners Mutual aptly notes, is that, in this case, "no person other than Adele is entitled to UIM coverage under the [P]olicy." Adele is not seeking separate liability limits from Jadyn's and Jennifer's liability insurer, Progressive, as the plaintiffs sought from the tortfeasors' liability insurers in *Miller* and *Iaquinta*. Indeed, it is because of WIS. STAT. § 632.32(3), *Miller*, and *Iaquinta* that Progressive paid separate $50,000 liability limits to Adele for Jadyn's and Jennifer's separate negligent conduct. Adele is instead seeking additional, otherwise unbargained-for liability limits from her own insurer, but Partners Mutual does not provide liability or UIM coverage to Jadyn and Jennifer, and nothing in the language of § 632.32(3), *Miller*, *Iaquinta*, or *Hall* requires Partners Mutual to do so. Partners Mutual, as Adele's UIM insurer, does not step in as Jadyn's and Jennifer's liability insurer.

¶48 In sum, the Policy complies with WIS. STAT. § 632.32(3)(a), and, pursuant to that section, there is no additional insured to whom the Policy's UIM coverage would apply "in the same manner and under the same provisions" as applicable to Adele. Thus, we see no reason to conclude that § 632.32(3)(a) requires Partners Mutual to provide Adele with separate UIM limits.

21

## CONCLUSION

¶49 Because neither the Policy's language nor WIS. STAT. § 632.32(3) require Partners Mutual to provide separate $100,000 UIM limits to Adele, we conclude that Adele is entitled to a single $100,000 UIM limit. Given that Adele does not dispute that the Policy's reducing clause reduces the $100,000 UIM limit by the separate $50,000 payments made by Progressive, the remaining available UIM limit for Adele is $0.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.